Rob Bonta
Attorney General of California
Giam M. Nguyen
Supervising Deputy Attorney General
Audra C. Call
Deputy Attorney General
State Bar No. 252804
 300 South Spring Street, Suite 1702
 Los Angeles, CA  90013
 Telephone:  (213) 269-6611
 Fax:  (916) 761-3641
 E-mail:  Audra.Call@doj.ca.gov
*Attorneys for Defendant*
*J. Sao*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **ROGELIO TREJO,**<br><br>Plaintiff,<br><br>v.<br><br>**DR. MICHAEL BRANDON FREEMAN, et al.,**<br><br>Defendants. | 2:18-cv-03458-JVS-ADS<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:     The Honorable Autumn D. Spaeth<br>Trial Date:  None assigned<br>Action Filed: April 25, 2018 |

TO PLAINTIFF ROGELIO TREJO, PRO SE,

Please take notice that Defendant J. Sao ("Defendant") will, and hereby does, move for summary judgment under Federal Rule of Civil Procedure 56 on the grounds that there is no genuine issue of material fact remaining in this case and Defendant is entitled to judgment as a matter of law.

This Motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, Defendant's Statement of Undisputed Facts and Conclusions of Law, the declarations in support and exhibits thereto, the Rand

Notice, the pleadings, records and files in this action, and such other matters as may properly come before the Court.

Pursuant to the Court's December 23, 2020 Case Management and Scheduling Order (ECF No. 63), Defendant does not request oral argument and no hearing date is set.

Dated:  September 21, 2021                    Respectfully submitted,

Rob Bonta
Attorney General of California
Giam M. Nguyen
Supervising Deputy Attorney General

*Audra C. Call*

Audra C. Call
Deputy Attorney General
*Attorneys for Defendant J. Sao*

# TABLE OF CONTENTS

**Page**

Memorandum of Points and Authorities .................................................... 1

Introduction................................................................................................ 1

Statement of Undisputed Facts ................................................................. 1

    I.      Plaintiff's Injury and Subsequent Treatment. ..................................... 1

    II.    Plaintiff's Grievance. ........................................................................... 6

Standard on Summary Judgment ............................................................... 8

Standard on Summary Judgment For Plaintiff's Failure to Exhaust
    Administrative Remedies .......................................................................... 9

Argument ................................................................................................. 10

    I.      Defendant is Entitled to Judgment as a Matter of Law Because
        Plaintiff Did Not Exhaust His Administrative Remedies. .................. 10

        A.    The Legal Standard for a Motion for Summary Judgment
            for Failure to Exhaust. ............................................................. 10

        B.    Compliance with the Exhaustion Requirement is
            Mandatory. ................................................................................ 11

        C.    Plaintiff Had an Available Remedy through a
            Comprehensive Appeals Process. ............................................. 12

        D.    Plaintiff Failed to Exhaust His Administrative Remedies
            for His Claims. .......................................................................... 13

            1.    LAC HC 17000263 Filed by Plaintiff Did Not
                Exhaust Plaintiff's Administrative Remedies
                Because It Does Not Identify Defendant Sao or the
                Issues Complained of in the SAC. ................................ 13

            2.    LAC HC 17000263 Would Not Have Been Timely
                 When Filed if It Was Intended to Cover the Matters
                at Issue in the SAC. ...................................................... 13

            3.    Plaintiff's New Allegations In Response To The
                Institutional Level's Response To LAC HC
                17000263 Were Not Considered As Part of The
                Appeal. .......................................................................... 14

    II.    There is No Genuine Dispute of Fact That Defendant Was Not
        Deliberately Indifferent to Plaintiff's Medical Needs. .................... 15

        A.    Standard for Deliberate Indifference under 42 U.S.C. §
            1983. .......................................................................................... 16

        B.    There Is No Evidence That Defendant Sao Acted With A
            Sufficiently Culpable State Of Mind To Satisfy The
            Deliberate Indifference Standard. ............................................. 17

        C.    The Undisputed Evidence Establishes That Defendant Sao
            Did Not Have Any Knowledge That Plaintiff's First
            Surgery Was Done Improperly. ............................................... 20

1
2

## TABLE OF CONTENTS
### (continued)

Page

D.   A Difference Of Opinion Regarding Medical Treatment Does Not Support An Eighth Amendment Claim Under Section 1983. .......................................................................... 20

Conclusion ........................................................................................... 22

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

CASES

*Albino v. Baca*
   747 F.3d 1162 (9th Cir. 2014) (en banc)............................................9, 10, 11, 12

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986) ...............................................................................................8, 9

*Berg v. Kincheloe*
   794 F.2d 457 (9th Cir. 1986) ...................................................................................8

*Cano v. Taylor*
   739 F.3d 1214 (9th Cir. 2014) ...............................................................................11

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986) ..................................................................................................8

*Estelle v. Gamble*
   429 U.S. 97 (1976) ............................................................................................16, 17

*Farmer v. Brennan*
   511 U.S. 825 (1994) ................................................................................................16

*Hudson v. McMillian*
   503 U.S. 1 (1992) ....................................................................................................16

*Jett v. Penner*
   439 F.3d 1091 (9th Cir. 2006) ...............................................................................17

*Jones v. Bock*
   549 U.S. 199 (2007) ......................................................................................9, 10, 11

*McGuckin v. Smith*
   974 F.2d 1050 (9th Cir. 1992) ...............................................................................16

*McKinney v. Anderson*
   959 F.2d 853 (9th Cir. 1992) .................................................................................16

*McKinney v. Carey*
   311 F.3d 1198 (9th Cir. 2002) ...............................................................................11

1

2

# TABLE OF AUTHORITIES
## (continued)

Page

3

4

*Porter v. Nussle*
    534 U.S. 516 (2002) ........................................................................ 11

5

6

*Sapp v. Kimbrell*
    623 F.3d 813 (9th Cir. 2010) ........................................................ 12

7

8

*Scott v. Harris*
    550 U.S. 372 (2007) .......................................................................... 9

9

10

*Snow v. McDaniel*
    681 F.3d 978 (1991) ........................................................... 17, 18, 21

11

12

*Toguchi v. Chung*
    391 F.3d 1051 (9th Cir. 2004) ............................................. 16, 17, 20

13

*Triton Energy Corp. v. Square D Co.*
    68 F.3d 1216 (9th Cir. 1995) ........................................................... 9

14

15

*Wilson v. Seiter*
    501 U.S. 294 (1991) ...................................................................... 16

16

17

*WMX Technologies v. Miller*
    104 F.3d 1133 (9th Cir. 1997) (en banc) ...................................... 16

18

19

*Wood v. Housewright*
    900 F.2d 1332 (9th Cir. 1990) ................................................. 16, 17

20

*Woodford v. Ngo*
    548 U.S. 81 (2006) ........................................................................ 11

21

22

**STATUTES**

23

42 U.S.C. § 1983 .............................................................................. *passim*

24

42 U.S.C. § 1997e(a) .............................................................. 9, 10, 11

25

Prison Litigation Reform Act. 42 U.S.C. § 1997e ............................ 10

26

**CONSTITUTIONAL PROVISIONS**

27

U.S. Constitution Eighth Amendment ............................ 16, 17, 19, 20

28

iv

# TABLE OF AUTHORITIES
## (continued)

**Page**

**COURT RULES**

Federal Rules of Civil Procedure Rule
    56 ...................................................................................................................... 9, 10
    56(a) ...................................................................................................................... 8

**OTHER AUTHORITIES**

California Code of Regulations, Title 15
    § 3084 ................................................................................................................ 6, 12
    § 3084.1(a) ............................................................................................................. 6
    § 3084.8(b)(1) ...................................................................................................... 13
    § 3085 ................................................................................................................ 6, 12
    § 3086 ........................................................................................................... 6, 7, 12
    § 3087.5(i) ............................................................................................................ 15
    §§ 3999.225 – 3999.237 .................................................................................. 6, 12

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff Rogelio Trejo ("Plaintiff") is an inmate currently in the custody of the California Department of Corrections and Rehabilitation ("CDCR").  Plaintiff has filed an action under 42 U.S.C. § 1983 alleging that Defendant Sao was deliberately indifferent to his pain and medical condition after Plaintiff had surgery on his jaw that ultimately was found to have been done improperly.

Defendant is entitled to summary judgement as a matter of law in this action as there is no genuine dispute of fact that: (1) Plaintiff failed to exhaust his administrative remedies before filing suit in this case; and (2) Defendant Sao was not deliberately indifferent to a substantial risk of harm to Plaintiff.

### STATEMENT OF UNDISPUTED FACTS

**I.   PLAINTIFF'S INJURY AND SUBSEQUENT TREATMENT.**

At all times relevant to this case, Plaintiff was an inmate in the custody of CDCR and was housed at the Kern Valley State Prison ("KVSP") in Delano, California. (Defendant J. Sao's Statement of Undisputed Facts ("SUF") No. 1.) Defendant was a physician and surgeon employed by CDCR and assigned to KVSP. (SUF Nos. 10 & 11.)

On or about February 5, 2017, Plaintiff was assaulted by his cellmate who hit Plaintiff in the face and knocked Plaintiff unconscious. (SUF No. 4.)  Plaintiff awoke in the institution's Correctional Treatment Clinic ("CTC") and was informed that he needed to be taken to an outside hospital to be treated for facial fractures he sustained during the assault. (SUF No. 5.)  Plaintiff was given a CT scan of his head which revealed that he had "sustained bilateral mandibular fracture, nondisplaced nasal bone fracture, [and] right orbital fracture with orbital emphysema" which required surgery. (SUF No. 6.)

On February 6, 2017, Dr. Michael Freeman, at San Joaquin Hospital, performed a procedure on Plaintiff identified as an "intermaxillary fixation"

surgery. (SUF No. 7.) Plaintiff's jaw was wired shut after this procedure. (SUF No.
8.)  On February 7, 2017, Plaintiff was transported back to KVSP and housed in the
CTC. (SUF No. 9.)

Defendant Sao was, and is, a licensed physician and surgeon. (SUF No. 10.)
At the time, and currently, Defendant Sao was assigned to KVSP, specifically at the
CTC as the CTC physician. (SUF No. 11.)  Defendant Sao's job duties in this
assignment were to oversee the general medical care of all the infirmary patients.
Defendant Sao managed the care of the CTC patients as any outside
internist/hospitalist would in the community, along with input from other
specialists. (SUF No. 12.)  In Plaintiff's case, Defendant Sao was responsible for
monitoring Plaintiff's primary medical needs (i.e. managing hypertension or
providing diabetes care or treating asthma if any of these conditions existed) as well
as ordering follow-up appointments with Plaintiff's specialist, Dr. Freeman, and
monitoring that Dr. Freeman's written recommendations and discharge instructions
were followed. (SUF No. 13.)

In compliance with his job duties, Defendant Sao made sure Plaintiff received
the proper diet (a wired-jaw diet), pain medications (a combination of Tylenol 3
and NSAIDs), and observed Plaintiff for potential complications such as infections.
Defendant Sao was also responsible for ordering follow-up appointments with Dr.
Freeman per Dr. Freeman's own recommendations and as Defendant Sao saw
necessary. (SUF No. 14.) As a specialist, Dr. Freeman was responsible for the
proper placement of the oral hardware in Plaintiff's jaw and responsible to follow
up with Plaintiff in a timely matter. (SUF No. 15.)  It was Dr. Freeman's
responsibility to decide when to remove the hardware and whether there was proper
alignment and enough healing to Plaintiff's jaw to take out the hardware. (*Id*.)  Dr.
Freeman was also responsible for following up on Plaintiff's care per his own
recommended timeline. (*Id*.)  Because Dr. Freeman was a board-certified plastic
surgeon, and Plaintiff's medical issues were within Dr. Freeman's scope of

practice, Defendant Sao relied on Dr. Freeman's decision-making with respect to the surgical process and identification of other complications resulting from his surgical decisions. (SUF No. 16.)

On February 8, 2017, Defendant Sao conducted a history and physical examination of Plaintiff. Defendant Sao ordered Plaintiff a wired-jaw diet, Tylenol 3 for pain, requested a dietary consult, and ordered a follow up visit with Dr. Freeman in three (3) weeks, as per the discharge instructions from Dr. Freeman. (SUF No. 17.) Because Plaintiff's jaw was wired shut, Defendant Sao was unable to examine inside of his mouth at any time before the wires were removed. (SUF No. 18.)

From February 8, 2017 through March 8, 2017, Plaintiff's medical records and progress notes show that Plaintiff stated he was doing well during examinations. (SUF No. 19.) Defendant Sao would, and will, review and rely upon the progress notes prepared by other medical professionals when evaluating his care and the cases of patients. (SUF No. 20.)

Plaintiff was seen by Dr. Freeman for a follow up appointment on or about March 8, 2017, and Dr. Freeman provided information that Plaintiff was healing well. (SUF No. 21.) Approximately six (6) weeks after Plaintiff's initial surgery, Plaintiff was again seen by Dr. Freeman, upon referral by Defendant Sao, and Dr. Freeman removed the hardware from Plaintiff's jaw. (SUF No. 22.) Dr. Freeman did not provide any information to Defendant Sao that there were any complications from the surgery or any issues with Plaintiff's jaw. (SUF No. 23.)

On March 14, 2017, Defendant Sao examined Plaintiff and noted that Plaintiff was still only able to tolerate a puree diet and had difficulty opening his mouth (SUF No. 24.) In Defendant Sao's medical experience with patients whose jaws have been wired for a period of time, and who have been on a wired-jaw diet, that was not unusual. (*Id*.) On March 15, 2017, Defendant Sao ordered physical therapy for Plaintiff for range-of-motion exercises and for ice packs due to slight swelling

1    Defendant Sao noticed to patient's jaw and Defendant Sao also prescribed NSAIDs.

2    (SUF No. 25.)  Defendant Sao followed up with Plaintiff on March 16, 2017 (SUF

3    No. 26.) The swelling on Plaintiff's jaw had decreased due to the NSAIDs and ice

4    packs. (*Id.*)  Plaintiff was able to open his mouth 1.5 inch in vertical height, which

5    was an improvement. (*Id.*) Defendant Sao did not observe any outward deformity

6    upon exam. (*Id.*)

7        On March 18, 2017, a nursing note in Plaintiff's records reflected that Plaintiff

8    denied pain on that date. (SUF No. 27.) On March 21, 2017, Plaintiff's medical

9    records reflected that Plaintiff saw Dr. Ulit during CTC rounds and that Plaintiff

10   was improving and no swelling was observed. (SUF No. 28.)  Defendant Sao was

11   able to review all of Plaintiff's medical records, including progress notes and

12   nursing notes, prior to and during, visits with Plaintiff, including notes such as

13   those entered by the nurse on March 18 and Dr. Ulit on March 21, 2017. (SUF No.

14   29.)  At no time did any of these notes indicate that there were any complications

15   from Plaintiff's initial surgery or that Plaintiff communicated to anyone that he was

16   in severe pain or distress. (*Id.*)

17       On March 23, 2017, Defendant Sao saw Plaintiff and, for the first time,

18   Plaintiff had a new complaint that he was biting on his left buccal mucosa (the

19   lining of the teeth and lips.) (SUF No. 30.)  There was new swelling on the left side

20   on the outside of Plaintiff's jaw. (*Id.*) Defendant Sao was able observe mucosa

21   irritation on the inside of Plaintiff mouth. (*Id.*)  On March 23, 2017, Defendant Sao

22   ordered Plaintiff to be started on Augmentin (antibiotics) and ordered for Plaintiff

23   to be seen by Dr. Freeman for a follow-up visit. (SUF No. 30.)

24       On March 30, 2017, Plaintiff was supposed to have a follow-up appointment

25   with Dr. Freeman but went out to an ophthalmology appointment instead. (SUF No.

26   32.)  It is not clear whether Plaintiff missed the appointment with Dr. Freeman

27   because there was a conflicting ophthalmology appointment or because Dr.

28   Freeman rescheduled the appointment. (*Id.*)  Regardless, for some reason, the off-

1  site scheduler was not able to schedule a successful follow-up appointment with Dr.

2  Freeman's office, despite Defendant Sao's orders that Plaintiff be seen by Dr.

3  Freeman. (*Id*.)  After Defendant Sao discovered that Plaintiff was unable to see Dr.

4  Freeman as Defendant Sao had requested, and because Plaintiff was complaining of

5  an overbite and had symptoms of the same, Defendant Sao referred Plaintiff for an

6  urgent dental appointment. (SUF No. 33.)  On April 4, 2017, Plaintiff was seen by

7  Dr. Henlee, DDS who took an x-ray panel of Plaintiff's jaw. (SUF No. 34.)  The x-

8  ray panel revealed, and Dr. Henlee advised, that Plaintiff had a displaced molar and

9  possible displaced hardware. (SUF No. 35.)

10     When Defendant Sao became aware of the issues from the x-ray, he spoke

11  with the utilization management nurse who advised that they would not be able to

12  get an oral maxillofacial surgeon that day or the next, so Defendant Sao referred

13  Plaintiff out to Mercy Hospital in Bakersfield on an emergency basis. (SUF No.

14  36.)  Prior to arranging for Plaintiff's transport to Mercy Hospital, Defendant Sao

15  specifically spoke with Dr. Ahmed who was the accepting physician at the hospital.

16  Dr. Ahmed told Defendant Sao that he would get Dr. Norris, a board-certified

17  maxillofacial surgeon, to see Plaintiff. (SUF No. 37.)  Defendant Sao, therefore,

18  ordered immediate transport of Plaintiff to Mercy's Emergency Department. (*Id*.)

19     Defendant Sao was not aware that there were any issues with the first surgery

20  or that the first surgery had been unsuccessful until he reviewed the x-rays taken on

21  or around April 4, 2017. (SUF No. 38.)  As soon as Defendant Sao actually

22  suspected a problem with Plaintiff's jaw and with the first surgery, based off of the

23  x-rays Defendant Sao acted immediately to get Plaintiff seen by an off-site surgeon

24  for treatment. (SUF No. 39.)

25     On April 6, 2017, Plaintiff underwent another surgery on his jaw. (SUF no.

26  40.)  This second surgery was conducted by Dr. Norris, an outside specialist and

27  board-certified maxillofacial surgeon. (SUF No. 41.) After Plaintiff's surgery on

28  April 6, 2017, Plaintiff was again discharged from Mercy Hospital back to KVSP.

When Plaintiff was discharged from Mercy Hospital, he was prescribed Tylenol 3 and Motrin. (SUF Nos. 42-43.)

During his time treating Plaintiff in the CTC between February 5, 2017 through April 4, 2017, Defendant Sao exercised his training, experience, and medical judgment to provide Plaintiff with all of the treatment and care that was appropriate under the circumstances. (SUF No. 44.)  The care that Defendant Sao provided Plaintiff was proper, adequate, and consistent with community standards. (SUF No. 45.)  At no time did Defendant Sao ever knowingly or intentionally deny Plaintiff adequate medical care and at no time has Defendant Sao ever knowingly or intentionally sought to deny Plaintiff access to medically indicated care or treatment. (SUF No. 46.)  Defendant Sao has never knowingly or intentionally disregarded any risk of harm or injury to Plaintiff. (*Id*.)  In treating Plaintiff, and monitoring his case, Defendant Sao performed his duties to the best of his ability and in compliance with all appropriate CDCR procedures and regulations. (SUF No. 47.)  Defendant Sao was, at all times, motivated by a genuine concern for Plaintiff's health and well-being in Defendant's professional role as a physician. (*Id*.)

## II.  PLAINTIFF'S GRIEVANCE.

CDCR had a comprehensive administrative appeals system for prisoners' complaints at the time of the incidents at issue in the SAC, including for health care complaints, which was described in Title 15 of the California Code of Regulations §§ 3084 – 3086 prior to September 1, 2017 and in §§ 3999.225 – 3999.237 after September 1, 2017. (SUF No. 48.)  The appeals process was available to Plaintiff at the time of the matters at issue in the SAC. (SUF No. 49.) California Code of Regulations, Title 15, section 3084.1(a), in effect at the time of the incident, provided that any inmate may appeal any departmental decision, action, condition, or policy which they could demonstrate as having a material effect upon their safety, health, or welfare. (SUF No. 50.)  Under title 15 of the California Code of

1   Regulations, an inmate had thirty (30) calendar days to submit an appeal from the
2   occurrence of the event or decision being appealed, or upon first knowledge of the
3   action or decision being appealed. (SUF No. 51.)

4       Since August 1, 2008, health care appeals/grievances involving inmate
5   medical, dental, and mental health care issues have been processed by the
6   California Correctional Health Care Services (CCHCS) through the Health Care
7   Correspondence and Appeals Branch (HCCAB). (SUF No. 52.) At the time of the
8   incidents at issue in the SAC, to exhaust the administrative appeal process, an
9   inmate was required to complete his appeal through three levels of review before
10  administrative remedies were deemed exhausted. (SUF No. 53.)

11      The grievance procedure required the inmate to identify, by name and title or
12  position, each staff member alleged to be involved in the action or decision being
13  appealed, along with the dates each staff member was involved in the issue being
14  appealed. (SUF No. 54.)  If the inmate did not have this information, he was
15  required to provide any other available information that would assist the appeals
16  coordinator in identifying the staff member. (*Id*.)  If an inmate submitted an appeal
17  that was untimely, lacked critical information, or otherwise did not comply with the
18  regulations governing the appeal process, the appeal could be cancelled or rejected,
19  meaning it was not accepted for review. (SUF No. 55.)  The cancellation or
20  rejection of an appeal at any level did not exhaust the appeal process. (*Id*.)

21      Plaintiff filed one healthcare appeal in 2017 which was assigned Tracking
22  Number LAC HC 17000263 and was received by the institution on October 11,
23  2017 (more than six (6) months after the matters at issued in the SAC). (SUF No.
24  56.)  In LAC HC 17000263, Plaintiff made allegations that he had botched dental
25  surgeries that caused pain and prevented him from "perform[ing] the daily
26  necessities of life."  Plaintiff sought injunctive and monetary relief. (SUF No. 57.)
27  In LAC HC 17000263, Plaintiff identified the date of second surgery by Dr. Norris
28  as September 11, 2017 when the true date was April 6, 2017. (SUF No. 58.)

1    Plaintiff did not name any medical professionals other than Dr. Freeman and Dr.
2    Norris in LAC HC 17000263. (SUF No. 59.)  In LAC HC 17000263, Plaintiff did
3    not make any allegations that he was provided inadequate pain management or
4    medical care by anyone, let alone Defendant Sao, during the time between the two
5    surgeries. (SUF No. 60.)  If Plaintiff intended LAC HC 17000263 to alert the
6    institution to issues with Defendant Sao and/or Plaintiff's pain management and
7    medical care between the two surgeries, the appeal would have been untimely
8    because Plaintiff filed the grievance more than thirty (30) days after the incident or
9    circumstances which he was appealing. (SUF No. 61.)

10    Plaintiff did not exhaust the administrative appeal process for his allegations
11    of deliberate indifference to Plaintiff's serious medical needs against Defendant
12    prior to bringing suit in this action. (SUF No. 62.)  Plaintiff did not submit any
13    other health care appeals or grievances in 2017. (SUF No. 63.)

14    **STANDARD ON SUMMARY JUDGMENT**

15    Summary judgment is appropriate if, reviewing the evidence in the light most
16    favorable to the party opposing the motion, there is no genuine issue of material
17    fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.
18    P. 56(a); *Berg v. Kincheloe,* 794 F.2d 457, 459 (9th Cir. 1986).  To prevent entry of
19    summary judgment, a plaintiff must present competent evidence showing that there
20    remain genuine issues of material fact concerning whether defendant violated his
21    rights.  *Id.*  In doing so, the plaintiff cannot rest solely on conclusory allegations
22    (*id.*), but must present "specific facts showing that there is a genuine issue for trial."
23    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

24    The opposing party must demonstrate that the fact in dispute is material, *i.e.*,
25    the fact might affect the outcome of the suit under governing law; a fact is material
26    only if it affects the outcome of the case under applicable substantive law.
27    *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "The mere existence of
28    a scintilla of evidence in support of the non moving party's position is not

8

1    sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir.
2    1995).  Irrelevant or unnecessary facts are not material.  *Anderson*, 477 U.S. at 248.
3        The dispute must also be genuine, *i.e.*, the evidence is such that a reasonable
4    jury could return a verdict for the non-moving party.  *Id.*  Additionally, if the non-
5    moving party's version of facts is "blatantly contradicted by the record, so that no
6    reasonable jury could believe it, a court should not adopt that version of the facts
7    for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550
8    U.S. 372, 380 (2007).

9 | 10
### STANDARD ON SUMMARY JUDGMENT FOR PLAINTIFF'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

11       The PLRA requires that "a prisoner confined in any jail, prison, or other
12   correctional facility" exhaust all available administrative remedies before initiating
13   a civil action with respect to prison conditions. 42 U.S.C. § 1997e(a).  The
14   demonstration of exhaustion is not a pleading requirement; rather, a plaintiff's
15   failure to exhaust administrative remedies is an affirmative defense that a defendant
16   must raise and prove.  *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007).  The proper
17   procedural vehicle for a defendant to raise the exhaustion affirmative defense is
18   through a motion for summary judgment under Rule 56 of the Federal Rules of
19   Civil Procedure.  *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc).
20       In the context of seeking summary judgment based on the failure to comply
21   with the PLRA's exhaustion requirement, "the defendant's burden is to prove that
22   there was an available administrative remedy, and that the prisoner did not exhaust
23   that available remedy." *Albino*, 747 F.3d at 1172.  When the defendant satisfies
24   this initial burden, "the burden shifts to the prisoner to come forward with evidence
25   showing that there is something in his particular case that made the existing and
26   generally available administrative remedies effectively unavailable to him." *Id.*  If
27   the undisputed evidence, construed in the light most favorable to the prisoner,
28

1  demonstrates a failure to exhaust available administrative remedies, then summary
2  judgment should be granted. *Id.* at 1166.

3  **ARGUMENT**

4  **I.   DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW**
   **BECAUSE PLAINTIFF DID NOT EXHAUST HIS ADMINISTRATIVE**
5  **REMEDIES.**

6      As a threshold matter, Defendant is entitled to judgment as a matter of law
7  because Plaintiff indisputably failed to exhaust his administrative remedies under
8  the Prison Litigation Reform Act. 42 U.S.C. § 1997e.  Plaintiff did not file a
9  grievance naming Defendant or alleging any issues of deliberate indifference as to
10 pain management or medical treatment during the time between Plaintiff's two
11 surgeries, February 6, 2017 through April 6, 2017.  Because Plaintiff failed to
12 exhaust his administrative remedies, this action must be dismissed.

13 **A.   The Legal Standard for a Motion for Summary Judgment for**
   **Failure to Exhaust.**
14

15     The PLRA requires that "a prisoner confined in any jail, prison, or other
16 correctional facility" exhaust all available administrative remedies before initiating
17 a civil action with respect to prison conditions.  42 U.S.C. § 1997e(a).  The
18 demonstration of exhaustion is not a pleading requirement; rather, a plaintiff's
19 failure to exhaust administrative remedies is an affirmative defense that a defendant
20 must raise and prove. *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007).  The proper
21 procedural vehicle for a defendant to raise the exhaustion affirmative defense is
22 through a motion for summary judgment under Rule 56 of the Federal Rules of
23 Civil Procedure.  *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc).
24     In the context of seeking summary judgment based on the failure to comply
25 with the PLRA's exhaustion requirement, "the defendant's burden is to prove that
26 there was an available administrative remedy, and that the prisoner did not exhaust
27 that available remedy." *Albino*, 747 F.3d at 1172.  When the defendant satisfies
28 this initial burden, "the burden shifts to the prisoner to come forward with evidence

10

1   showing that there is something in his particular case that made the existing and

2   generally available administrative remedies effectively unavailable to him." *Id.* If

3   the undisputed evidence, construed in the light most favorable to the prisoner,

4   demonstrates a failure to exhaust available administrative remedies, then summary

5   judgment should be granted. *Id.* at 1166.

6   **B.    Compliance with the Exhaustion Requirement is Mandatory.**

7       The PLRA mandates that no action under § 1983 with respect to prison

8   conditions "shall be brought . . . by a prisoner confined in any jail, prison, or other

9   correctional facility until such administrative remedies as are available are

10  exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement is mandatory.

11  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). A claim must be exhausted before it is

12  brought in a lawsuit. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); see also *Cano v.*

13  *Taylor*, 739 F.3d 1214, 1219 (9th Cir. 2014) ("The Ninth Circuit has explained that

14  Congress purposefully made exhaustion a precondition to suit, rather than to

15  judgment.")

16      Plaintiff was required to exhaust the mandatory grievance procedure in place

17  at the time prior to initiating this action. *McKinney v. Carey*, 311 F.3d 1198 (9th

18  Cir. 2002). Exhaustion during the pendency of the litigation will not save an action

19  from dismissal. *Woodford*, 548 U.S. at 83-84; *McKinney*, 311 F.3d at 1200. A

20  prisoner does not satisfy the PLRA's exhaustion requirement under 42 U.S.C. §

21  1997e(a) by filing an untimely or otherwise procedurally defective administrative

22  grievance or appeal. *Woodford*, 548 U.S. at 83-84. To properly exhaust

23  administrative remedies, a prisoner must complete the administrative grievance

24  process in accordance with the prison's procedural rules, including compliance with

25  an agency's deadlines. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford*, 548

26  U.S. at 90-91.

27      While the Ninth Circuit has recognized that exhaustion is not required under

28  the PLRA "when circumstances render administrative remedies 'effectively

unavailable,'" *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010), see also *Albino*, 747 F.3d at 1171, such is not the case in this action and there is no evidence that the grievance process was unavailable to Plaintiff.

### C.    Plaintiff Had an Available Remedy through a Comprehensive Appeals Process.

Plaintiff was required to exhaust his administrative remedies because the administrative appeals process was available to him, as set forth in Title 15 of the California Code of Regulations §§ 3084 – 3086 prior to September 1, 2017 and as set forth in §§ 3999.225 – 3999.237 after September 1, 2017. (SUF No. 48.)

At the time of the incidents at issue in this case, February 7, 2017 through April 6, 2017, CDCR had a comprehensive administrative appeals system for prisoner complaints, including for healthcare grievances. (SUF No. 48.)  Inmates were able to appeal any departmental decision, action, condition, or policy which they could demonstrate as having an adverse effect upon their health, safety, or welfare, within thirty days of the occurrence of the event. (*Id*.)

The undisputed evidence establishes that there was a grievance procedure available to Plaintiff and that he was aware of the procedures. (SUF Nos. 48-49.) In fact, Plaintiff filed an appeal regarding the "botched" surgeries[1], specifically naming Drs. Freeman and Norris, but not naming Defendant Sao. (SUF Nos. 56-57, 59-60.)  Plaintiff also admitted in his SAC that there was a grievance procedure available to him at the institution by checking the box for "Yes" in response to the question "Is there a grievance procedure available at the institution where the events related to your current complaint occurred?" (ECF No. 15 at 2.)

Because Plaintiff was aware of the grievance process during the applicable time period—and actually availed himself of the process with respect to an appeal

---

[1] In his grievance, Plaintiff erroneously identified the surgery conducted by Dr. Norris as happening on September 11, 2017 when it was actually conducted on April 6, 2017.  It is unknown whether Plaintiff did this to avoid denial of the appeal because it was not timely at that point since Plaintiff filed the grievance more than thirty (30) days after the actual matters at issue in the SAC but it certainly affected the ability for the grievance reviewer to identify the issues in the grievance.

1  related to the surgeries he received from Drs. Freeman and Norris—the

2  administrative appeals process was available to him, and he was required to exhaust

3  all claims against all Defendants before filing suit.

4      **D.   Plaintiff Failed to Exhaust His Administrative Remedies for His Claims.**

5

6        Plaintiff has not exhausted his administrative remedies as to his claim against

7  Defendant Sao.

8      **1.   LAC HC 17000263 Filed by Plaintiff Did Not Exhaust Plaintiff's Administrative Remedies Because It Does Not Identify Defendant Sao or the Issues Complained of in the SAC.**

9

10

11        Although Plaintiff filed a grievance referring to the surgeries he received from

12  Drs. Freeman and Dr. Norris (LAC HC LAC HC 17000263), he did not include

13  Defendant Sao in this grievance, nor did he make any allegations of inadequate

14  medical treatment or pain management by any of the personnel at the CTC at KVSP

15  between February 7, 2017 and April 6, 2017. (SUF Nos. 56-60.)  Instead, the

16  allegations appear to suggest an ongoing medical issue after the second surgery.

17  Because Plaintiff did not identify Defendant Sao or the specific circumstances

18  complained of in his SAC, Plaintiff did not comply with the institution's

19  regulations related to filing of grievances.  Plaintiff did not, therefore, exhaust his

20  administrative remedies as to the complaints in his SAC.

21      **2.   LAC HC 17000263 Would Not Have Been Timely When Filed if It Was Intended to Cover the Matters at Issue in the SAC.**

22

23        The regulations in existence at the time required that an inmate file a grievance

24  within thirty (30) days of the occurrence of the event or decision being appealed.

25  Cal. Code. Regs., tit. 15 § 3084.8(b)(1).  Plaintiff filed grievance LAC HC

26  17000263 on October 11, 2017[2]. (SUF No. 56.)  The matters that Plaintiff

27        [2] Because Plaintiff filed this appeal on October 11, 2017, instead of within thirty (30) days of the actual incidents at issue in the SAC, the appeal was handled

28

complains about in his SAC occurred between February 5, 2017 and April 6, 2017. (SUF Nos. 7, 9 & 37.)  *LAC HC 17000263 would not have been timely filed, then,* if it were intended to address the issues that occurred in the CTC during the February to April 2017 time period and intended to address the treatment provided to Plaintiff by Defendant Sao during that time. (SUF No. 61.)  Perhaps in recognition of this lack of timeliness, in the grievance, Plaintiff misidentifies the date of the second surgery as September 11, 2017. (SUF No. 58.)  The grievance appears then to suggest that there are ongoing medical issues with Plaintiff as of October 11, 2017 when the grievance was filed and it is not at all clear that Plaintiff is complaining about the conduct of Defendant Sao between the two surgeries. Because Plaintiff did not timely file any grievance covering the matters complained of in his SAC, Plaintiff did not exhaust his administrative remedies.

### 3.    Plaintiff's New Allegations In Response To The Institutional Level's Response To LAC HC 17000263 Were Not Considered As Part of The Appeal

Following the initial response to LAC HC 17000263 from the institution, Plaintiff appealed that decision and stated the following in expressing dissatisfaction with the institutional level response:

> I am dissatisfied based on the fact that no corrective action was taken toward this, even with regards to remedies in pain management, or medical injunctive relief.  Additionally, I must continue to the next level in order to exhaust administrative remedies. (Exhibit B to Hart Dec.)

The Headquarters' Level Response by the HCCAB specifically addressed this new allegation related to "pain management," not raised in the original grievance and refused to address this new issue, citing California Code of Regulations title 15,

---

under the new healthcare grievance procedures implemented on September 1, 2017. (*See* Declaration of R. Hart in Support of Motion for Summary Judgment ("Hart Dec.") at ¶ 7.)  If Plaintiff had filed the appeal in a timely manner, the appeal would have been handled under the prior grievance procedures.  This does not affect the analysis of Plaintiff's failure to exhaust, however.

14

section 3087.5(i). (Hart Dec. at Exhibit B.)  Specifically, the Headquarter's Level Response stated:

> It is not appropriate to expand the health care grievance beyond the initial issue[s].  The Health Care Correspondence and Appeals Branch has the discretion whether to address new issues; it has been determined the new issue(s), *pain management*, no included in the originally submitted CDCR 602 HC, Health Care Grievance, will not be addressed at the headquarter's level per California Code of Regulations, Title 15, Section 3087.5(i). (Hart Dec. at Exhibit B.)

Section 3087.5(i), which governed the new healthcare grievance regulations implemented on September 11, 2017 provided that "at its sole discretion, HCCAB may address new issues not previously submitted or included in the original health care grievance." Cal Code Regs, tit. 15, § 3087.5(i).  The new pain management allegations were, therefore, not considered in the appeal and Plaintiff specifically did not, then, exhaust any grievance related to pain management.

For all of these reasons, Plaintiff has failed to exhaust his administrative remedies related to the allegations in his SAC and Defendant is, therefore, entitled to judgment as a matter of law.

## II.   THERE IS NO GENUINE DISPUTE OF FACT THAT DEFENDANT WAS NOT DELIBERATELY INDIFFERENT TO PLAINTIFF'S MEDICAL NEEDS.

Plaintiff alleges that Defendant Sao was deliberately indifferent to Plaintiff's medical needs during the time that Plaintiff was housed in the CTC between his first surgery, February 5, 2017 and his second surgery on April 6, 2017.  The undisputed facts, however, do not support this allegation and, instead, show that the evidence does not support a showing of deliberate indifference.  Defendant is, therefore, entitled to judgment as a matter of law.

### A.    Standard for Deliberate Indifference under 42 U.S.C. § 1983.

In order to state a §1983 claim for violation of the Eighth Amendment based on inadequate medical care, Plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  To prevail, Plaintiff must show both that his medical needs were objectively serious, and that defendant possessed a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992). The requisite state of mind for a medical claim is "deliberate indifference." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting *Estelle*, 429 U.S. at 104), overruled on other grounds, *WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court established a very demanding standard for "deliberate indifference." "While poor medical treatment will at a certain point rise to the level of constitutional violation, *mere malpractice, or even gross negligence, does not suffice.*" *Wood v. Housewright*, 900 F.2d 1332, (9th Cir. 1990) (emphasis added).  Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient to establish an Eighth Amendment violation. *Farmer*, 511 U.S. at 837 & n.5.  It is not enough that a reasonable person would have known of the risk or that a defendant should have known of the risk. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). Rather, deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Id.* (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or

1    failure to respond to a prisoner's pain or possible medical need and (b) harm caused

2    by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation

3    omitted).

4        Where an inmate's medical records show that "the defendants provided

5    medical care, medications, and specialist referrals" to the inmate during the time

6    period in question, the inmate can prove deliberate indifference "by showing that

7    prison administrators or physicians denied, delayed, or intentionally interfered with

8    [treatment]," or that they delivered medical care in a deliberately indifferent

9    manner. *Snow v. McDaniel*, 681 F.3d 978, 985 (1991). A mere delay in treatment

10   does not constitute a violation of the Eighth Amendment, unless the delay causes

11   serious harm. *Wood*, 900 F.2d at 1335.

12   **B.    There Is No Evidence That Defendant Sao Acted With A
13          Sufficiently Culpable State Of Mind To Satisfy The Deliberate
            Indifference Standard.**

14       To satisfy this standard for deliberate indifference, the plaintiff must prove an

15   objective element – that the medical need was serious enough to be cruel and

16   unusual – and a subjective element – that the official acted with the sufficiently

17   culpable state of mind, deliberate indifference. *Estelle* 429 U.S. at 103; *Snow v.*

18   *McDaniel*, 681 F.3d 978, 985 (1991).  Here, the undisputed evidence establishes

19   that there is no basis for finding that Defendant was deliberately indifferent.

20       Defendant Sao became involved with Plaintiff's care after Plaintiff had

21   returned from the hospital where he underwent jaw surgery conducted by Dr.

22   Freeman, a specialist in that type of surgery, on February 6, 2017. (SUF Nos. 11,

23   13.)  When Plaintiff returned from the hospital, his jaw was wired shut. (SUF No.

24   8.)  Until Plaintiff's jaw was unwired, Defendant Sao was not able to examine the

25   inside of Plaintiff's mouth. (SUF No. 18.)  Defendant Sao was not aware that there

26   were any complications or errors in the surgery performed by Dr. Freeman. (SUF

27   No. 38.)  Defendant Sao fulfilled his duties in the CTC by referring Plaintiff out to

28   Dr. Freeman multiple times for follow-up treatment, including for removal of the

1   hardware Dr. Freeman had placed on Plaintiff's jaw during the initial surgery. (SUF
2   Nos. 22) It was communicated to Defendant Sao from these follow-up visits with
3   Dr. Freeman that everything was healing well and there were no issues with the
4   surgery that had been performed by Dr. Freeman. (SUF No. 23.)

5       When Defendant Sao observed swelling to Plaintiff's jaw, he prescribed
6   NSAIDs and ice packs, which appeared to alleviate the swelling. (SUF No. 25.)
7   When Defendant Sao became subjectively aware that there may be issues stemming
8   from the original surgery, after discovering irritation of Plaintiff's left buccal
9   mucosa, Defendant Sao immediately prescribed antibiotics and referred Plaintiff for
10  a consultation with Dr. Freeman.  (SUF No. 31.)  When Plaintiff was not able to be
11  seen by Dr. Freeman immediately, as Defendant Sao requested, Defendant Sao then
12  issued an urgent referral for Plaintiff to see a dentist. (SUF No. 33.) The dentist
13  took an x-ray and Defendant Sao was able to review the x-ray. (SUF Nos. 34-35.)
14  When the x-ray revealed an issue that was concerning to Defendant Sao—in other
15  words, when there was evidence sufficient to support that Defendant Sao was
16  subjectively aware of a possible risk to Plaintiff— Defendant sought an urgent
17  referral to an oral maxillofacial surgeon. (SUF No. 36.)  When Defendant Sao was
18  informed that it could not be arranged for Plaintiff to see a surgeon that day or the
19  next, Defendant Sao immediately alternatively arranged for an urgent transport to
20  Mercy Hospital for outside treatment from another specialist, after confirming that
21  a specialist was available. (*Id*.)

22      None of the actions by Defendant Sao referenced herein are the actions of a
23  medical professional who was indifferent to his patient's medical needs.  Instead,
24  this evidence establishes that Defendant Sao provided medical care, medications,
25  and specialist referrals in line with his obligations as the CTC physician.  In fact,
26  Plaintiff was seen twice by Dr. Freeman after the initial surgery, upon referral by
27  Defendant Sao, and there was no indication provided by Dr. Freeman, the surgical
28  specialist, that there were any issues or complications with the surgery.  When there

1  was actual information received by Defendant Sao that indicated there was an issue
2  with Plaintiff's jaw surgery, Defendant Sao acted expeditiously and reasonably in
3  seeking the necessary treatment for Plaintiff.   Plaintiff cannot present any evidence
4  to the contrary.

5      In his deposition Plaintiff admitted that he did not have information that
6  Defendant Sao had a sufficiently culpable state of mind to satisfy the medical
7  deliberate indifference standard.  At Plaintiff's deposition, the following exchange
8  occurred:

9      Q:[Def's counsel]  Do you have any reason to think that [Defendant Sao]
10                         would just purposely try and not provide you medical
11                         services?

12     A: [Plaintiff]     No. Just other than that he messed up[3], you know?
13                        That's all he kept telling me. "I messed up." And that was
14                        it.  (Deposition of Plaintiff ("Pltf. Depo.") at 79:17-21.)

15     Even if this was true, that Defendant Sao made these statements to Plaintiff
16  (which Defendant Sao denies), at most what this would support, a comment about
17  "messing up," would be a finding of negligence[4] which does not satisfy the
18  standard for sustaining a deliberate indifference claim under the Eighth
19  Amendment.  It would not be indicative of the necessary conscious state of mind—
20  knowing that there was a significant medical issue and refusing to do anything
21  about it—such that Plaintiff can sustain a claim of deliberate indifference.

22

23

24

25

26  _____

    [3] Plaintiff clarified elsewhere in his deposition that Defendant Sao was
    referring to the decision to send Plaintiff to Dr. Freeman particularly when
    Defendant Sao said he "messed up." Pltf. Depo. at 78:4-13.
27     [4] Defendant Sao denies that he acted negligently in any way and asserts that
    his treatment of Plaintiff was appropriate and consistent with the standards in the
28  community.

C.    **The Undisputed Evidence Establishes That Defendant Sao Did Not Have Any Knowledge That Plaintiff's First Surgery Was Done Improperly.**

In order to prevail under a medical deliberate indifference claim, Plaintiff must make a showing that Defendant "*[knew] of* and disregard[ed] an excessive risk to inmate health and safety." *Toguchi*, 391 F.3d at 1057 (emphasis added.)  Here, the undisputed evidence establishes that Defendant Sao did not know that there were any issues or complications with Plaintiff's first surgery or that there was anything unusual with Plaintiff's healing.

Defendant Sao asserts that he was unaware of any issues with Plaintiff's jaw or from the surgery and that it was not until x-rays were taken of Plaintiff's jaw when Defendant Sao referred Plaintiff to the clinic dentist (on an urgent basis due to actually observable symptoms) that Defendant suspected there was a problem. (SUF Nos. 38-39.)  As soon as Defendant Sao was actually aware there was an issue, Defendant Sao acted expeditiously to refer Plaintiff to another outside hospital for emergency treatment. (SUF Nos. 36-37.)

Plaintiff has no information to contradict any of these assertions by Defendant Sao.  In fact, in his deposition, when Plaintiff was asked if he had any information that Defendant Sao knew that there was something wrong with Plaintiff's jaw other than Plaintiff saying it was "messed up," Plaintiff admitted, "No, I mean, *I don't know if they actually knew personally*, but I knew that it was messed up." (Pltf. Depo. at 69:11-12) (emphasis added.)  This testimony establishes that Plaintiff does not have any evidence to create a genuine dispute of fact that Defendant was not deliberately indifferent to a serious risk to Plaintiff with respect to Plaintiff's medical needs.

D.    **A Difference Of Opinion Regarding Medical Treatment Does Not Support An Eighth Amendment Claim Under Section 1983.**

"A difference of opinion between a physician and the prisoner or between medical professionals concerning what medical care is appropriate does not amount

to deliberate indifference." *Snow*, 681 F.3d at 987. Rather, "[t]o show deliberate indifference, the plaintiff 'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Id.* at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

The undisputed evidence refutes any suggestion that Defendant Sao refused to provide medical treatment to Plaintiff, or even that Defendant Sao delayed medical treatment. The evidence establishes that Defendant Sao examined Plaintiff (as well as other medical professionals), prescribed Plaintiff pain medication – Tylenol 3[5] and NSAIDS[6], ordered ice packs when he saw necessary, and referred Plaintiff repeatedly to the specialist, Dr. Freeman, for care. Defendant Sao offered continuous care to Plaintiff, but it appears it was not the care that Plaintiff believed was appropriate. Plaintiff has not, and cannot, present any evidence that the course of treatment Defendant Sao chose was "medically unacceptable under the circumstances" or that Defendant Sao "chose this course in conscious disregard of an excessive risk to plaintiff's health."

Instead, Plaintiff appears to have wanted stronger, narcotic pain medication and/or an earlier x-ray in the CTC. At most, this rises to a difference in opinion between what Defendant Sao determined to be appropriate medical care and what Plaintiff determined to be appropriate medical care, which is not actionable under § 1983. Plaintiff's claim for deliberate indifference against Defendant Sao cannot, therefore, be sustained.

---

[5] Contrary to Plaintiff's assertions that Plaintiff was only prescribed Tylenol, the record reflects that Defendant Sao actually prescribed Plaintiff Tylenol 3 – a combination of acetaminophen and codeine. It should also be noted that Plaintiff's medical records, attached to his SAC, reflect that Plaintiff has a history of substance abuse, including amphetamines, cocaine, heroin, marijuana, and methamphetamines. ECF No. 15 at 20.

[6] Incidentally, these are the same medications that were ordered for Plaintiff upon discharge from Mercy Hospital after the second surgery which indicates that subscribing this type of medication was medically appropriate and community-standard under the circumstances.

1

## CONCLUSION

2          Based on the foregoing, there is no genuine dispute of fact (1) that Plaintiff

3    has failed to exhaust his administrative remedies for his allegations in the SAC, and

4    (2) that Defendant Sao was not deliberately indifferent to a substantial risk of harm

5    to Plaintiff.  For those reasons Defendant's Motion for Summary Judgment should

6    be granted and judgment dismissing the case should be entered on behalf of

7    Defendant.

8

9

          Dated:  September 21, 2021                    Respectfully submitted,

10

                                                        ROB BONTA
11                                                      Attorney General of California
                                                        GIAM M. NGUYEN
12                                                      Supervising Deputy Attorney General

13

14

15                                                      AUDRA C. CALL
                                                        Deputy Attorney General
16                                                      *Attorneys for Defendants J. Sao*

     LA2020604139
17   64540964.docx

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

Case Name:  **Trejo, Rogelio v. Michael**          No.   **2:18-cv-03458-JVS-ADS**
            **Freeman, et. al.**

I hereby certify that on **September 21, 2021**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

## DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

\

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users.  On **September 21, 2021**, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Rogelio Trejo – CDCR# V53099
Calipatria State Prison
P.O. Box 5007
Calipatria, CA  92233
Pro Se

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on **September 21, 2021**, at Los Angeles, California.

Aida L. Paraiso
Declarant                                          Signature

LA2020604139
64555620.docx