ROB BONTA
Attorney General of California
GIAM M. NGUYEN
Supervising Deputy Attorney General
AUDRA C. CALL
Deputy Attorney General
State Bar No. 252804
 300 South Spring Street, Suite 1702
 Los Angeles, CA  90013
 Telephone:  (213) 269-6611
 Fax:  (916) 761-3641
 E-mail:  Audra.Call@doj.ca.gov
*Attorneys for Defendant*
*J. Sao*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **ROGELIO TREJO,**<br><br>Plaintiff,<br><br>v.<br><br>**DR. MICHAEL BRANDON FREEMAN, et al.,**<br><br>Defendants. | 2:18-cv-03458-JVS-ADS<br><br>**DEFENDANT'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:      The Honorable Autumn D. Spaeth<br>Trial Date:   None assigned<br>Action Filed: April 25, 2018 |

Pursuant to Federal Rule of Civil Procedure 56, Defendant J. Sao ("Defendant") submits the following proposed statement of undisputed material facts as to which he contends there are no genuine issues, and which entitle him to summary judgment as a matter of law.  Defendant identifies these facts as undisputed solely for the purpose of moving for summary judgment.  Defendant reserves the right to contest all material facts at trial.

///

# STATEMENT OF UNDISPUTED FACTS

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 1. Plaintiff is a California State Prison inmate. At all relevant times alleged in the Complaint, Plaintiff was housed at Kern Valley State Prison ("KVSP") in Delano, California. | ECF No. 1 at 4[1]; ECF No. 15 at 6. |
| 2. On April 25, 2018, Plaintiff filed a Complaint under 42 U.S.C. § 1983. Plaintiff named ten (10) defendants and made multiple allegations against each. Plaintiff subsequently filed a First Amended Complaint which was screened out by the Court and Plaintiff, thereafter, filed a Second Amended Complaint. ("SAC"). | ECF No. 1, 5, 12 & 15. |
| 3. On December 22, 2020, the Court dismissed all defendants except Defendant Sao for Plaintiff's failure to prosecute. The only remaining claim in this case is a claim against Defendant Sao for deliberate | ECF Nos. 15 & 62. |

---

[1] All page number references are to those page numbers assigned by the ECF system.

| | |
|---|---|
| indifference under the Eighth Amendment. | |
| 4. On or about February 5, 2017, Plaintiff was assaulted by his cellmate who hit Plaintiff in the face and knocked him unconscious. | ECF No. 15 at 6: ¶ 1, 7: ¶ 6, & 19. |
| 5. Plaintiff awoke in the institution's Central Treatment Clinic ("CTC") and was informed that he needed to be taken to an outside hospital to be treated for facial fractures he sustained during the assault. | ECF No. 15 at 8, ¶ 8. |
| 6. Plaintiff was given a CT scan of his head which revealed that he had a "sustained bilateral mandibular fracture, nondisplaced nasal bone fracture, [and] right orbital fracture with orbital emphysema" which required surgery. | ECF No. 15 at 9, ¶ 16 and 23. |
| 7. On February 6, 2017, Dr. Michael Freeman, a board-certified plastic surgeon, at San Joaquin Hospital performed a procedure on Plaintiff identified as an "intermaxillary fixation" surgery. | Pltf. Depo. at 31:14-22; ECF No. 15 at 10, ¶ 17 and 24. Declaration of Defendant J. Sao ("Sao Dec.") at ¶ 4. |

| | |
|---|---|
| 8. Plaintiff's jaw was wired shut after the procedure. | Pltf. Depo. at 33:5-11; ECF No. 15 at 26; Sao Dec. at ¶ 5. |
| 9. On February 7, 2017, Plaintiff was transported back to KVSP and housed in the Correctional Treatment Clinic ("CTC"). | Pltf. Depo. at 34:22-35:2, 35:25-36:15; ECF No. 15 at 10, ¶ 19; Sao Dec. at ¶ 5. |
| 10. Defendant Sao is a licensed physician and surgeon. | Sao Dec. at ¶ 2. |
| 11. At the time at issue in this action, February 5, 2017 through April 6, 2017 and currently, Defendant Sao was assigned to KVSP and, specifically, the CTC as the CTC physician. | Sao Dec. at ¶ 2. |
| 12. Defendant Sao's job duties in this assignment were to oversee the general medical care of all the infirmary patients. Defendant Sao managed the care of the CTC patients as any outside internist/hospitalist would in the community along with input from other specialists. | Sao Dec. at ¶ 2. |

| | |
|---|---|
| 13. In Plaintiff's case, Defendant Sao was responsible for monitoring Plaintiff's primary medical needs (i.e. managing hypertension or providing diabetes care or treating asthma if any of these conditions existed) as well as ordering follow-up appointments with Plaintiff's specialist, Dr. Freeman and monitoring that Dr. Freeman's written recommendations and discharge instructions were followed. | Sao Dec. at ¶ 6. |
| 14. In compliance with his job duties, Defendant Sao made sure Plaintiff received the proper diet (a wired-jaw diet), pain medications (a combination of Tylenol 3 and NSAIDs), and observed Plaintiff for potential complications such as infections. Defendant Sao was also responsible for ordering follow-up appointments with Dr. Freeman per Dr. Freeman's own recommendations and as Defendant Sao saw necessary. | Pltf. Depo. at 37:18-22; Sao Dec. at ¶ 6. |

| | |
|---|---|
| 15. As a specialist, Dr. Freeman was responsible for the proper placement of the oral hardware in Plaintiff's jaw and responsible to follow up with Plaintiff in a timely matter. It was Dr. Freeman's responsibility to decide when to remove the hardware and whether there was proper alignment and enough healing to Plaintiff's jaw to take out the hardware. Dr. Freeman was also responsible for following up on Plaintiff's care per his own recommended timeline. | Sao Dec. at ¶ 7. |
| 16. Because Dr. Freeman was a board-certified plastic surgeon, and Plaintiff's medical issues were within his scope of practice, Defendant Sao relied on Dr. Freeman's decision-making with respect to the surgical process and identification of other complications resulting from his surgical decisions. | Sao Dec. at ¶ 8. |
| 17. On February 8, 2017, Defendant Sao conducted a history and | Sao Dec. at ¶9. |

| | |
|---|---|
| physical examination of Plaintiff. Defendant Sao ordered Plaintiff a wired-jaw diet, Tylenol 3 for pain, requested a dietary consult, and ordered a follow up visit with Dr. Freeman in three (3) weeks, as per the discharge instructions from Dr. Freeman. | |
| 18. Because Plaintiff's jaw was wired shut, Defendant Sao was unable to examine inside of Plaintiff's mouth at any time before the wires were removed. | Sao Dec. at ¶ 10; Pltf. Depo. at 56:18-57:7. |
| 19. From February 8, 2017 through March 8, 2017, the medical records and progress notes show that Plaintiff stated he was doing well during examinations. | Sao Dec. at ¶ 11. |
| 20. Defendant Sao would, and will, review and rely upon the progress notes prepared by other medical professionals when evaluating his care and the cases of patients. | Sao Dec. at ¶ 12. |
| 21. Plaintiff was seen by Dr. Freeman for a follow up appointment on or | Sao Dec. at ¶ 13. |

| | |
|---|---|
| about March 8, 2017 and Dr. Freeman provided information that Plaintiff was healing well. | |
| 22. Approximately six (6) weeks after Plaintiff's initial surgery, Plaintiff was again seen by Dr. Freeman, upon referral by Defendant Sao, and Dr. Freeman removed the hardware from Plaintiff's jaw. | Pltf. Depo. at 61:10-25; ECF No. 15 at 12, ¶ 23; Sao Dec. at ¶ 15. |
| 23. Dr. Freeman did not provide any information to Defendant Sao that there were any complications from the surgery or any issues with Plaintiff's jaw. | Sao Dec. at ¶ 15; Pltf. Depo. at 62:20-63:4 |
| 24. On March 14, 2017, Defendant Sao examined Plaintiff and noted that Plaintiff was still only able to tolerate a puree diet and had difficulty opening his mouth.  In Defendant Sao's medical experience with patients whose jaws have been wired for a period of time, and who have been on a wired-jaw diet, that was not unusual. | Sao Dec. at ¶ 16; Pltf. Depo. at 56:5-17. |

| | |
|---|---|
| 25. On March 15, 2017, Defendant Sao ordered physical therapy for Plaintiff for range-of-motion exercises and for ice packs due to swelling Defendant Sao noticed to patient's jaw and Defendant Sao also prescribed NSAIDs. | Sao Dec. at ¶ 17. |
| 26. Defendant Sao followed up with Plaintiff on March 16, 2017.  The swelling on Plaintiff's jaw had decreased due to the NSAIDs and ice packs.  Plaintiff was able to open his mouth 1.5 inch in vertical height, which was an improvement. Defendant Sao did not observe any outward deformity upon exam. | Sao Dec. at ¶ 18; Pltf. Depo. at 63:19-25 |
| 27. On March 18, 2017, a nursing note in Plaintiff's records reflected that Plaintiff denied pain on that date. | Sao Dec. at ¶ 19. |
| 28. On March 21, 2017, Plaintiff's medical records reflected that Plaintiff saw Dr. Ulit during CTC rounds and that Plaintiff was improving and no swelling was observed. | Sao Dec. at ¶ 20. |

| | |
|---|---|
| 29. Defendant Sao was able to review all of Plaintiff's medical records, including progress notes and nursing notes, prior to and during, visits with Plaintiff, including notes such as those entered by the nurse on March 18 and Dr. Ulit on March 21, 2017. At no time did any of these notes indicate that there were any complications from Plaintiff's initial surgery or that Plaintiff communicated to anyone that he was in severe pain or distress. | Sao Dec. at ¶ 21. |
| 30. On March 23, 2017. Defendant Sao saw Plaintiff and, for the first time, Plaintiff had a new complaint, that he was biting on his left buccal mucosa (the lining of the teeth and lips.)  There was new swelling on the left side on the outside of Plaintiff's jaw.  Defendant Sao was able observe mucosa irritation on the inside of Plaintiff mouth. | Sao Dec. at ¶ 22. |
| 31. On March 23, 2017, Defendant Sao ordered Plaintiff to be started on | Sao Dec. at ¶ 22. |

| | |
|---|---|
| Augmentin (antibiotics) and ordered for Plaintiff to be seen by Dr. Freeman for a follow-up visit. | |
| 32. On March 30, 2017, Plaintiff was supposed to have a follow-up appointment with Dr. Freeman but went out to an ophthalmology appointment instead.  It is not clear whether Plaintiff missed the appointment with Dr. Freeman because there was a conflicting ophthalmology appointment or because Dr. Freeman rescheduled the appointment.  Regardless, for some reason, the off-site scheduler was not able to schedule a successful follow-up appointment with Dr. Freeman's office, despite Defendant Sao's orders that Plaintiff be seen by Dr. Freeman. | Sao Dec. at ¶ 23; Pltf. Depo. at 67:3-15 |
| 33. After Defendant Sao discovered that Plaintiff was unable to see Dr. Freeman as Dr. Sao had requested, and because Plaintiff was complaining of an overbite and had symptoms of the same, Defendant | Sao Dec. at ¶ 24. |

| | |
|---|---|
| Sao referred Plaintiff for an urgent dental appointment. | |
| 34. On April 4, 2017, Plaintiff was seen by Dr. Henlee, DDS who took an x-ray panel of Plaintiff's jaw. | Sao Dec. at ¶ 25; ECF No. 15 at 12, ¶ 26 and 34. |
| 35. The x-ray panel revealed, and Dr. Henlee advised, that Plaintiff had a displaced molar and possible displaced hardware. | Sao Dec. at ¶ 26; ECF No. 15 at 12, ¶ 26 and 34-36. |
| 36. When Defendant Sao became aware of the issues from the x-ray, he spoke with the utilization management nurse who advised that they would not be able to get an oral maxillofacial surgeon that day or the next so Defendant Sao referred Plaintiff out to Mercy Hospital in Bakersfield on an emergency basis. | Sao Dec. at ¶ 27; ECF No. 15 at 12, ¶¶ 26-27; Pltf. Depo. at 45:25-46:14; 42:17-25. |
| 37. Prior to arranging for Plaintiff's transport to Mercy Hospital, Defendant Sao specifically spoke with Dr. Ahmed who was the accepting physician at the hospital. Dr. Ahmed told Defendant Sao that he would get Dr. Norris, a board- | Sao Dec. at ¶ 28. |

| | |
|---|---|
| certified maxillofacial surgeon, to see Plaintiff. Defendant Sao, therefore, ordered immediate transport of Plaintiff to Mercy's Emergency Department. | |
| 38. Defendant Sao was not aware that there were any issues with the first surgery or that the first surgery had been unsuccessful until he reviewed the x-rays taken on or around April 4, 2017. | Sao Dec. at ¶¶ 27-28; Pltf. Depo. at 45:25-46:14; 42:17-25, 69:7-70:10. |
| 39. As soon as Defendant Sao actually suspected a problem with Plaintiff's jaw and with the first surgery, Defendant Sao acted immediately to get Plaintiff seen by an off-site surgeon for treatment. | Sao Dec. at ¶¶ 27-28; Pltf. Depo. at 70:20-25. |
| 40. On April 6, 2017, Plaintiff underwent another surgery on his jaw. | ECF No. 15 at 13, ¶ 30. |
| 41. This second surgery was conducted by Dr. Norris, an outside specialist and board-certified maxillofacial surgeon. | ECF No. 15 at 13, ¶ 30. |

| | |
|---|---|
| 42. After Plaintiff's surgery on April 6, 2017, Plaintiff was again discharged from Mercy Hospital back to KVSP. | ECF No. 15 at 48. |
| 43. When Plaintiff was discharged from Mercy Hospital, he was prescribed Tylenol 3 and Motrin. | ECF No. 15 at 48. |
| 44. During his time treating Plaintiff in the CTC between February 5, 2017 through April 4, 2017, Defendant Sao exercised his training, experience, and medical judgment to provide Plaintiff with all of the treatment and care that was appropriate under the circumstances. | Sao Dec. at ¶ 29. |
| 45. The care that Defendant Sao provided Plaintiff was proper, adequate, and consistent with community standards. | Sao Dec. at ¶ 30. |
| 46. At no time did Defendant Sao ever knowingly or intentionally deny Plaintiff adequate medical care and at no time has Defendant Sao ever knowingly or intentionally sought to deny Plaintiff access to medically | Sao Dec. at ¶ 31. |

| | |
|---|---|
| indicated care or treatment. Defendant Sao has never knowingly or intentionally disregarded any risk of harm or injury to Plaintiff. | |
| 47. In treating Plaintiff, and monitoring his case, Defendant Sao performed his duties to the best of his ability and in compliance with all appropriate CDCR procedures and regulations. Defendant Sao was, at all times, motivated by a genuine concern for Plaintiff's health and well-being in his professional role as a physician. | Sao Dec. at ¶ 32. |
| **Plaintiff's Failure to Exhaust Administrative Remedies** | |
| 48. CDCR had a comprehensive administrative appeals system for prisoners' complaints, including for health care complaints, which was described in Title 15 of the California Code of Regulations §§ 3084 – 3086 prior to September 1, 2017 and in §§ 3999.225 – 3999.237 after September 1, 2017. | Declaration of R. Hart in Support of Motion for Summary Judgment ("Hart Dec.") at ¶¶ 1-7. |

| | |
|---|---|
| 49. The appeals process was available to Plaintiff at the time of the matters at issue in the SAC. | Hart Dec. at ¶¶ 1-7; ECF. No. 15 at 2, B(1). |
| 50. CCR, Title 15, section 3084.1(a) in effect at the time of the incident in this case provided that any inmate may appeal any departmental decision, action, condition, or policy which they could demonstrate as having a material effect upon their safety, health, or welfare. | Cal. Code Regs., tit. 15, § 3084.1(a); Hart Dec. at ¶¶ 6 & 7. |
| 51. Under title 15 of the California Code of Regulations, an inmate had 30 calendar days to submit an appeal from the occurrence of the event or decision being appealed, or upon first knowledge of the action or decision being appealed. | Cal. Code Regs., tit. 15, § 3084.8(b); Hart Dec. at ¶¶ 6 & 7. |
| 52. Since August 1, 2008, health care appeals/grievances involving inmate medical, dental, and mental health care issues have been processed by the California Correctional Health Care Services (CCHCS) through the | Hart Dec. at ¶ 3. |

| | |
|---|---|
| Health Care Correspondence and Appeals Branch (HCCAB). | |
| 53. At the time of the incidents at issue in the SAC, to exhaust the administrative appeal process, an inmate was required to complete his appeal through three levels of review before administrative remedies were deemed exhausted. | Cal. Code Regs., tit. 15, §§ 3084.7(d)(3) (2016); Hart Dec.at ¶ 6. |
| 54. The grievance procedure required the inmate to identify, by name and title or position, each staff member alleged to be involved in the action or decision being appealed, along with the dates each staff member was involved in the issue being appealed.  If the inmate did not have this information, he was required to provide any other available information that would assist the appeals coordinator in identifying the staff member. | Cal. Code Regs., tit. 15, § 3084.2(a)(3); Hart Dec.at ¶ 6 . |
| 55. If an inmate submitted an appeal that was untimely, lacked critical information, or otherwise did not | Cal. Code Regs., tit. 15, § 3084.1(b) (describing that all appeals are subject to a third level review before |

| | |
|---|---|
| comply with the regulations governing the appeal process, the appeal could be cancelled or rejected, meaning it was not accepted for review.  The cancellation or rejection of an appeal at any level did not exhaust the appeal process. | administrative remedies are deemed exhausted, and a cancellation or rejection decision does not exhaust administrative remedies); Hart Dec.at ¶ 6; *see also* Cal. Code Regs., tit. 15, § 3084.6(a)-(f) (describing rejection, cancellation, and withdrawal criteria). |
| 56. Plaintiff filed one healthcare appeal in 2017 which was assigned Tracking Number LAC HC 17000263 and received by the institution on October 11, 2017 (more than six (6) months after the matters at issued in the SAC). | Hart Dec. at ¶¶ 9 & 10, Exhibits A and B; ECF No. 15. |
| 57. In LAC HC 17000263, Plaintiff made allegations that he had botched dental surgeries that caused pain and prevented him from "perform[ing] the daily necessities of life."  Plaintiff sought injunctive and monetary relief. | Hart Dec. at ¶ 10, Exhibit B. |
| 58. In LAC HC 17000263, Plaintiff identified the date of second surgery by Dr. Norris September 11, 2017 | Hart Dec. at ¶ 10, Exhibit B; ECF No. 1 at 12-14; ECF No. 15 at 40-41. |

| | |
|---|---|
| when the true date was April 6, 2017. | |
| 59. Plaintiff did not name any medical professionals other than Dr. Freeman and Dr. Norris in LAC HC 17000263. | Hart Dec. at ¶ 10, Exhibit B; ECF No. 1 at 12-14. |
| 60. In LAC HC 17000263, Plaintiff did not make any allegations that he was provided inadequate pain management or medical care by anyone, let alone Defendant Sao, during the time between the two surgeries. | Hart Dec. at ¶ 10, Exhibit B; ECF No. 1 at 12-14. |
| 61. If Plaintiff intended LAC HC 17000263, to alert the institution to issues with Defendant Sao and/or his pain management and medical care between the two surgeries, the appeal would have been untimely. | Cal. Code Regs., tit. 15, § 3084.8(b); Hart Dec. at ¶¶ 6 & 7. |
| 62. Plaintiff did not exhaust the administrative appeal process for his allegations of excessive/unnecessary force against Defendant, prior to bringing suit in this action. | Hart Dec. at ¶¶ 9-11; Pltf. Depo. at 22:3-23:12. |

| 63. Plaintiff did not submit any other health care appeals or grievances in 2017. | Hart Dec. at ¶ 11, Exhibit A; Pltf. Depo. at 22:3-23:12. |
|---|---|

Dated:  September 21, 2021

Respectfully submitted,

ROB BONTA
Attorney General of California
GIAM M. NGUYEN
Supervising Deputy Attorney General

*[signature]*

AUDRA C. CALL
Deputy Attorney General
*Attorneys for Defendant*
*J. Sao*

LA2020604139
64550012.docx

# CERTIFICATE OF SERVICE

Case Name: **Trejo, Rogelio v. Michael Freeman, et. al.**    No.    **2:18-cv-03458-JVS-ADS**

I hereby certify that on **September 21, 2021**, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

## DEFENDANT'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On **September 21, 2021**, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Rogelio Trejo – CDCR# V53099
Calipatria State Prison
P.O. Box 5007
Calipatria, CA  92233
Pro Se

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on **September 21, 2021**, at Los Angeles, California.

|  Aida L. Paraiso  |  |
| --- | --- |
| Declarant | Signature |

LA2020604139
64555533.docx