1   ROB BONTA
    Attorney General of California
2   GIAM M. NGUYEN
    Supervising Deputy Attorney General
3   AUDRA C. CALL
    Deputy Attorney General
4   State Bar No. 252804
     300 South Spring Street, Suite 1702
5     Los Angeles, CA  90013-1230
      Telephone: (213) 408-5966
6     Fax: (916) 731-3641
      E-mail:  Audra.Call@doj.ca.gov
7   *Attorneys for Defendant*
    *J. Sao*

8

9            IN THE UNITED STATES DISTRICT COURT

10          FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                    WESTERN DIVISION

12

| | |
|---|---|
| **ROGELIO TREJO,** | 2:18-cv-03458-MEMF-(ADSx) |
| Plaintiff, | **DEFENDANT J. SAO'S POST-HEARING BRIEF FOLLOWING ALBINO HEARING ON EXHAUSTION** |
| **v.** | |
| **DR. MICHAEL BRANDON FREEMAN, et** | Judge:        The Honorable Maame Ewusi-Mensah Frimpong |
| **al.,** | Trial Date:  None assigned |
| Defendants. | Action Filed: April 25, 2018 |

1

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................... 1

Standard For Evaluating Exhaustion Of Administrative Remedies ........................... 1

    I.     Plaintiff's Grievance Did Not Comply With The Prison
          Regulations Regarding Exhaustion .................................................... 3

    II.    Plaintiff's Grievance Does Not Fall Into The Exception
          Articulated In *Reyes*. ........................................................................ 4

          A.    The Evidence Does Not Establish That Prison Officials
                Ignored a Procedural Defect in The Grievance. ...................... 6

          B.    Plaintiff's Complaints About Pain Management Were
                Specifically Not Addressed at Every Level .............................. 13

    III.   Administrative Remedies Were Not "Unavailable" To Plaintiff. ...... 14

    IV.   There Is No Evidence That The Grievance Was Improperly
          Handled, And That Would Not Excuse Exhaustion In Any
          Event. ................................................................................................ 16

    V.    The Institution Was Not On Notice The Plaintiff Alleged
          Improper Care By Defendant Sao ...................................................... 19

Conclusion .................................................................................................................. 22

1

# TABLE OF AUTHORITIES

2

**Page**

3

4

**CASES**

5

*Booth v. Churner*
   532 U.S. 731 ...................................................................................15

6

7

*Brannon v. Covarrubias*
   2024 WL 1253788 (9th Cir. 2024.) ....................................................13

8

9

*Bulkin v. Ochoa*
   No. 13-cv-00388 DAD DLB PC, 2 016 WL 1267265, at *2 (E.D.
   Cal. Apr. 1, 2016) .............................................................................14

10

11

*Davis v. Ugwueze*
   1:20-cv-00276-NODJ-HBK (PC), 2024 WL 519729 (E.D. Feb. 9,
   2024) ...........................................................................................19, 20

12

13

*Evans v. Muniz*
   C 15-2519 CRB (PR), 2016 U.S. Dist. LEXIS 51804 (N.D. Cal.
   April 18, 2016) ...........................................................................13, 14

14

15

16

*Fuller v. Eugene Nguyen*
   2:17-cv-0600 WBS AC P, 2023 WL 2636321 (E.D. Cal, March 4,
   2023)................................................................................................22

17

18

*Garrett v. Finander*
   2:18-cv-10754-AB-KES, 2019 WL 7879659 (C.D. Cal. Dec. 5,
   2019)..................................................................................................5

19

20

*Gomez v. Gonzalez*
   Case No. 1:22-cv-00977-HBK (PC), 2024 WL 3951002 (E.D. Cal.
   Aug. 27, 2024)............................................................................12, 13

21

22

23

*Green v. Thiessen*
   2019 WL 687877 (S.D. Cal. Feb. 19, 2019) .......................................11

24

25

*Griffin v. Arpaio*
   557 F.3d 1117 (9th Cir. 2009)..............................................................2

26

*Harmon v. Lewandowski*
   2023 WL 2570428 (9th Cir. 2023.) ......................................................8

27

28

ii

1

2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3

*Harmon v. Lewandowski*

4
    Case No. 2:20-cv-09437-VAP-MRWx, 2021 WL 6618681 (C.D.
Cal. Nov. 30, 2021) ...................................................................... 8, 18

5

6

*Jones v. Bock*
    549 U.S. 199 (2007) ...................................................................... 1, 2

7

8

*King v. D. Nguyen*
    Case No. 20-cv-06567-YGR (PR), 2022 WL 20275709 (C.D. Cal.

9
    July 7, 2022) ...................................................................................... 2

10

*Lee v. Look*

11
    2:22-cv-01010 DB, 2024 WL 1857540, *6-7 (E.D. Cal. April 29,
2024) ............................................................................................... 15

12

13

*Lee v. Willey*
    789 F.3d 673 (6th Cir. 2015) ......................................................... 14

14

15

*Martinez v. Beard*
    1:14-cv-00405-DAD-JLT (PC), 2017 WL 511854, *15 (E.D. Cal.

16
    Feb. 7, 2017) ................................................................................... 17

17

*Morton v. Hall*

18
    599 F.3d 942 (9th Cir. 2010) ......................................................... 15

19

*Ramirez v. Johnson, et. al.*
    Case No. 2:17-cv-07788-DSF-KES, 2019 U.S. Dist. LEXIS 166880

20
    (C.D. Cal. June 19, 2019) ........................................................ 20, 21

21

*Ramirez v. Rose*

22
    Case No. 2:19-cv-0827 KJN P, 2020 WL 1907445 (E.D. Cal March
5, 2020) ..................................................................................... 15, 21

23

24

*Reyes v. Smith*
    810 F.3d 654 (9th Cir. 2016) ................................................. *passim*

25

26

*Rice v. Bauer*
    2:15-cv-236-JAM-EFB P, 2018 WL 1109683 (E.D. Cal. March 1,

27
    2018) ............................................................................................... 10

28

1

2

<div align="center">

**TABLE OF AUTHORITIES**
**(continued)**

</div>

Page

*Ross v. Blake*
   578 U.S. 632 (2016) ................................................................................ 15, 19

*Sapp v. Kimbrell*
   623 F.3d 813 ....................................................................................... 2, 3, 16

*Sebelius v. Auburn Reg'l Med. Ctr.*
   568 U.S. 145 (2013) ................................................................................... 3

*Semtek Int'l Inc. v. Lockheed Martin Corp.*
   531 U.S. 497 (2001) .................................................................................. 12

*Smith v. Mendoza*
   Case No. 19-03750 BLF (PR), 2021 WL 930706 (N.D. Cal. March 10, 2021) ................................................................................................ 10, 18

*Toscano v. Adam*
   Case No. 16-cv-06800-EMC, 2019 WL 2288281 (N.D. Cal May 29, 2019) ................................................................................................... 10

*Wilkerson v. Wheeler*
   772 F.3d 834 (9th Cir. 2014) ..................................................................... 2

*Wilson v. Zubiate*
   718 Fed. Appx. 479 (9th Cir. 2017) ........................................................ 11

*Woodford v. Ngo*
   548 U.S. 81 (2006) .......................................................................... *passim*

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES
### (continued)

Page

**STATUTES**

Cal. Code Regs. Title 15
   § 339.227(g)(2) ........................................................................................ 4
   § 3084.2 ................................................................................................... 2
   § 3084.2(a) ........................................................................................... 2, 4
   § 3087-3087.11 ..................................................................................... 11
   § 3087.2-3087.12 (2017) ..................................................................... 11
   § 3087.2(b) ........................................................................................... 11
   § 3087.4-3087.5 ................................................................................... 11
   § 3087.5(i) ............................................................................................ 11
   § 3999.225-3999.237 ........................................................................... 11
   § 3999.227(b)(1) .................................................................................. 17
   § 3999.227(g)(1)-(2) .......................................................................... 3, 4
   § 3999.229 (a)(3) ................................................................................. 18
   § 3999.230(i)-(j) ............................................................................. 13, 18

**COURT RULES**

L.R. 11-6.1 ................................................................................................ 24

**OTHER AUTHORITIES**

PLRA ................................................................................... 1, 4, 16, 19

**INTRODUCTION**

Defendant has asserted that Plaintiff in this case failed to exhaust his administrative remedies against Defendant Sao for the claim of deliberate indifference in this case. On October 3, 2024, the parties participated in an evidentiary hearing on the matter of exhaustion. At the hearing, Plaintiff admitted that he was aware of Defendant Sao's identity at the time Plaintiff filed his grievance, and was specifically aware of Defendant Sao's name, title, physical description, and involvement in Plaintiff's care. Plaintiff did not provide any of this information in the only grievance he filed related to his jaw surgeries which are at issue in this case.  Thus Plaintiff did not comply with the prison's regulations when filing his grievance. Further, the exception to exhaustion articulated in *Reyes v. Smith*, 810 F.3d 654 (9th Cir. 2016) does not apply here because prison officials did not specifically waive a procedural defect and the Plaintiff's claims regarding pain management were expressly not considered at all levels of review. Plaintiff also was not relieved of his obligation to exhaust if he was only seeking monetary compensation. Finally, no perceived improper handling of the grievance relieved Plaintiff of his obligations to exhaust his administrative remedies.

**STANDARD FOR EVALUATING EXHAUSTION OF ADMINISTRATIVE REMEDIES**

Under the Prison Litigation Reform Act, 28 U.S.C. § 1915A (PLRA), it is mandatory that an inmate exhaust administrative remedies *prior* to filing a civil lawsuit. The Supreme Court has made it clear that, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is *the prison's requirements*, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007)(emphasis added) (finding that the plaintiff was not required to name the person against whom the inmate was grieving because the prison's regulations in effect at the time did not explicitly require that.)

1    A grievance suffices to exhaust a claim if it puts the prison on adequate notice

2    of the problem for which the prisoner seeks redress. "To provide adequate notice,

3    the prisoner need only provide the level of detail required by the prison's

4    regulations." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (quoting *Jones v. Bock*, 549 U.S.

5    199, 218 (2007)). In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held

6    that the PLRA's exhaustion requirement "'means using all steps that the agency

7    holds out, and doing *so properly* (so that the agency addresses the issues on the

8    merits).'" *Id.* at 90, 93 (emphasis in original; citation omitted). "Proper exhaustion

9    demands compliance with an agency's deadlines and other critical procedural

10   rules...." *Id.* at 90-91.

11   Several *past* Ninth Circuit cases have referred to the California prisoners'

12   grievance procedures as not specifying the level of detail necessary and instead

13   requiring only that the grievance "describe the problem and the action requested."

14   *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (quoting former Cal.

15   Code Regs. tit. 15, § 3084.2); *Sapp*, 623 F.3d at 824 ("California regulations require

16   only that an inmate 'describe the problem and the action requested.' Cal. Code Regs.

17   tit. 15, § 3084.2(a)."); *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (when

18   prison's procedures do not specify the requisite level of detail, "'a grievance suffices

19   if it alerts the prison to the nature of the wrong for which redress is sought'")

20   But the holdings in all of these cases, with respect to what detail is required in

21   a grievance, are no longer applicable as the CDCR regulations have since changed

22   to add specificity to what is required in the contents of a grievance. It is no longer

23   sufficient for the grievant to simply "alert the prison to the nature of the

24   wrongdoing." Any grievant must now comply with the specific regulations which,

25   since 2011, have required a grievant to specifically name the person against whom

26   they are filing a grievance and describe their involvement in the matters of which

27   the grievant complains. *See King v. D. Nguyen*, Case No. 20-cv-06567-YGR (PR),

28   2022 WL 20275709 (C.D. Cal. July 7, 2022)("Whatever the former requirements

may have been in the CDCR, and whatever requirements may still exist in other facilities, since January 28, 2011, the operative regulation has required California prisoners using the CDCR's inmate appeal system to list the name(s) of the wrongdoer(s) in their administrative appeals.")

## I.    PLAINTIFF'S GRIEVANCE DID NOT COMPLY WITH THE PRISON REGULATIONS REGARDING EXHAUSTION.

Compliance with the prison's regulations with respect to exhaustion is *mandatory* in order to establish adequate exhaustion. *Woodford*, 548 U.S. at 91, 93. In order for a grievance to provide adequate notice under the applicable regulations, an inmate must provide the level of detail required by the prison's regulations. *Sapp*, 623 F.3d at 824. Plaintiff did not do so in this case.

Here, the regulations in effect at the time of the matters at issue in Plaintiff's complaint explicitly required the following:

> (g) The grievant *shall* document clearly and coherently all information known and available to him or her regarding the issue.

> (1) The grievant *shall* include any involved staff member's last name, first initial, title or position, and the date(s) and description of their involvement.

> (2) If the grievant does not have information to identify involved staff member(s), the grievant shall provide any other available information that may assist in processing the health care grievance. Cal Code Regs., tit. 15, § 3999.227(g)(1)-(2).

The language in these regulations is mandatory, using "shall" when detailing what is required from the grievant. (*See Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 154 (2013)(The word "shall" connotes a "mandatory" requirement.)) And the language of these sections establishes a two-prong analysis to evaluate compliance. First, in order to comply with the regulations, the grievant must include the "name, first initial, title or position, and the date(s) and description of

their involvement." CCR § 3999.227(g)(1). The second prong specifies that a grievant can, alternatively, provide "other available information that may assist in the processing of the healthcare grievance." However, this option *only* comes about "*if the grievant **does not have information** to identify involved staff members…*". CCR §339.227(g)(2) (emphasis added.)

In this case, the analysis never should reach the second prong, because Plaintiff admitted at the hearing that he knew who Defendant Sao was, he knew Defendant Sao's name, and he knew Defendant Sao's involvement in Plaintiff's medical care at the time he filed his grievance.[1] Therefore, the second option in CCR §3999.227(g)(2) was not available to Plaintiff. To comply with the prison's regulations then, as case law requires, Plaintiff was required to provide the information he admittedly had, Defendant's name and Defendant's involvement in the incident. Plaintiff did not do that, thus, Plaintiff's claims against Defendant Sao have not been properly exhausted.

## II.   PLAINTIFF'S GRIEVANCE DOES NOT FALL INTO THE EXCEPTION ARTICULATED IN *REYES*.

As Plaintiff's counsel raised at the hearing, the courts *have* recognized an exception to the requirements to name individuals in a grievance.

In *Reyes v. Smith*, 810 F.3d 654 (9th Cir. 2016), the Ninth Circuit recognized an exception to the general rule of *Ngo*, holding "that a prisoner exhausts ... under the PLRA despite failing to comply with a procedural rule *if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process.*" *Id.* at 658 (inmate whose grievance failed to name all staff members involved in his case, as required by Cal. Code Regs., tit. 15 § 3084.2(a), nevertheless exhausted his claim of deliberate indifference to his serious medical needs because that

---

[1] The Court specifically identified this as a key factor to be decided at the evidentiary hearing. (ECF No. 119 at 4.)

claim was decided on its merits at all levels of review.) *Garrett v. Finander*, 2:18-cv-10754-AB-KES, 2019 WL 7879659, *4-5 (C.D. Cal. Dec. 5, 2019)(emphasis added.)

In *Reyes*, the plaintiff filed a health care grievance regarding the gradual termination of his access to morphine for pain management. 810 F.3d 654. The institution denied Plaintiff's grievance and appeals and noted in its responses that the prison's Pain Management Committee (PMC) had "recommended against narcotics." *Id.* at 656. After Plaintiff filed suit against two members of the prison's PMC and other prison officials, the district court granted an exhaustion-based motion for summary judgment as to the two PMC members because they had never been named individually in Plaintiff's health care grievances, contrary to the regulations in effect at the time. *Id.* at 656-57. The Ninth Circuit reversed, noting the explicit reference to the PMC in the institution's responses in finding that Plaintiff's grievance "plainly put prison officials on notice of the nature of the wrong alleged in his federal suit—denial of pain medication by the defendant doctors [because] [p]rison officials . . . plainly knew that the Pain Management Committee, of which Drs. Smith and Heatley and Smith were members, had decided Reyes should not receive the medication . . ." *Reyes*, 810 F.3d at 659. Thus, even though Reyes had not named the specific defendants in his grievance, the Court found that the prison and those defendants were on notice of the nature of Reyes' claims. The Ninth Circuit also held that where the prison did not enforce a procedural rule, such as the requirement of naming all involved individuals, but instead addressed a grievance on the merits, it could not later enforce that rule so long as it was on notice of the claim. *Id.* at 658.

The exception articulated in *Reyes* does not apply here. In order for that exception to apply, the Plaintiff must show two things: 1) that prison officials ignored a procedural problem in the submission of the grievance; AND 2) the prison officials rendered a decision of the merits of the grievance at each available

5

step of the administrative process. *Reyes*, 810 F.3d at 658. Plaintiff cannot make either of these showings.

### A.    The Evidence Does Not Establish That Prison Officials Ignored a Procedural Defect in The Grievance.

In *Reyes*, the court found that the plaintiff did not follow the regulations pertaining to healthcare grievances because the plaintiff did not provide *any* names in the grievance of any individuals against whom he was filing the grievance. 810 F.3d at 656. Thus, a procedural defect was obvious on the face of the grievance – there were no names, titles, positions, etc., identified as required by the prison's regulations. The grievance, then, could have been rejected as not complying with the regulations and the plaintiff could have been instructed to provide the names of the persons against whom he was complaining. The institution did not do that in *Reyes*; instead, prison officials rendered a decision at every level of the appeal process on the merits of the issue at the heart of the litigation. *Id.* Further, the responses from the institution specifically referenced the pain management committee and it was clear that the institution had considered the actions of the pain management committee, of which the defendants were an easily-identifiable part, when rendering decisions on the grievance. *Id.* at 656, 659.

Here, there is no evidence that prison officials waived a procedural defect by responding to Plaintiff's grievance. This is not a case where *no one* was named in the grievance, as in *Reyes*. Instead, here, Plaintiff did identify two specific medical providers, Dr. Norris and Dr. Freeman, and Plaintiff underlined each of those names. Thus, it was reasonable for prison officials to understand the grievance filed by Plaintiff was about medical treatment that Plaintiff received from those named doctors. There is no reason that the prison officials would have believe that Plaintiff was talking about anyone else.

There is also no evidence supporting that the institution would have understood Plaintiff was talking about pain management while he was in the CTC

in February and March 2017, based upon the wording in the grievance. The language in the grievance the Court pointed to as possibly suggesting a complaint against Defendant Sao is where Plaintiff claimed he was in "extreme" and "[undue] pain." (Order Declining to Adopt the Report and Recommendation and Denying the Motion for Summary Judgment. ECF No. 77 (MSJ Order) at 13.) But there is no evidence that prison officials understood that the pain Plaintiff was claiming to be experiencing came from anything other than the surgeries alone. There is no mention in the grievance that Plaintiff also was claiming to have been denied adequate pain medication while he was in the CTC six (6) months before. And, there is also no evidence in any of the medical records that pain management was an issue such that the institution would have been put on notice that this was possibly something Plaintiff was complaining about after a review of the records. (See Exhibit 6, e.g. at page 9 (Defendant Sao prescribed Plaintiff Tylenol 3 for pain), page 12 (on March 12, 2018, Plaintiff states "I'm okay. I have no pain" and notes indicate "Plaintiff denies pain"), page 13 (indicating "meds given"), page 21 (on March 9, 2018, Plaintiff states "feeling good, no pain" and notes reference Plaintiff does not complain of any pain and does not show any distress), page 28 (on March 7, 2018, Plaintiff states "I'm doing good," nurse notes Plaintiff "denies discomfort"), page 40 (on March 3, 2018, Plaintiff states "I have no pain. I am doing really good"), page 67 (on February 25, 2018, notes indicate "no complaints" Plaintiff "denies any discomfort), page 82 (om February 20, 2018, Plaintiff "offers no complaints" and Plaintiff "refuses pain medication"), page 101-102 (on March 30, 2018, Plaintiff complained of 5/10 pain in jaw, given Naprosyn which is indicated to have brought pain level to 1/10; Plaintiff has "no further complaint"), page 105 (on March 27, 2018, Plaintiff offers "no complaints" and refuses his Naprosyn.))[2]

---

[2] The records contained in Exhibit 6 consistently reflect that Plaintiff claimed that he does not have any pain, he is doing "good", he has no complaints, etc. On

(continued…)

In order for prison officials to waive a procedural defect, there must be evidence that they were aware there *was* a procedural defect. In other words, they needed to be aware that Plaintiff was complaining about medical care that he received from Defendant Sao more than sixth (6) months before he filed the grievance. There is no evidence that the prison officials understood the grievance to apply to medical care rendered by Defendant Sao and, thus, no evidence to establish that the institution was put on notice as the case law requires.

In *Harmon v. Lewandowski*, Case No. 2:20-cv-09437-VAP-MRWx, 2021 WL 6618681 (C.D. Cal. Nov. 30, 2021), the court dismissed claims against defendants that the plaintiff had not named in the original grievance. The plaintiff dentified one officer by name and made additional allegations against "floor staff." The District Court found that the reference to "floor staff" was too vague to comply with the prison's regulations with respect to the content of grievance and was insufficient to exhaust administrative remedies against an officer later named in the plaintiff's civil action who was not specifically named in the grievance. *Id.* at *26-27.

The matter decided in *Harmon* was then appealed to the Ninth Circuit which ruled as follows: "With no information from which to identify the unnamed officer (or any other employee), the prison had no reason to investigate her conduct, *and it was not required to speculate about the identities of any additional prison employees whose alleged conduct might be at issue*, or to assume that [the plaintiff] intended to assert a grievance against additional unidentified employees and thus reject the grievance on procedural grounds." *Harmon v. Lewandowski*, 2023 WL 2570428, *3-4 (9th Cir. 2023.)

---

the few occasions that Plaintiff does reference pain, the records reflect that Plaintiff was immediately provided medication which resolved the pain. The records also reflect that Plaintiff refuses pain medication on multiple occasions. Thus, even if the prison officials reviewed all of the medical records from six (6) months prior, there would be no notice from that review that Plaintiff had any issues with pain or pain management.

1    Consistent with the case law above, the Court here cannot impose an
2    obligation on the institution to comb through more than six (6) months of medical
3    records and speculate as to whether or not Plaintiff meant to include other CDCR
4    employees in his grievance. A vague reference to "pain" in Plaintiff's grievance
5    does not alert the institution that Plaintiff had complaints about pain management
6    for care received more than six (6) months before the grievance was filed. Further,
7    a review of six (6) months of records of medical treatments from two different
8    institutions would have included numerous CDCR medical staff. As Plaintiff was
9    complaining about pain even in October 2017 when he was interviewed by Dr.
10   Parra, it would be impossible for the institution to understand whose and what
11   actions Plaintiff found to be problematic. (Exhibit 11.) There is no case law
12   imposing a duty to investigate on the institution. Instead, the duty, per regulations,
13   is on a grievant to comply with the regulations.

14       The evidence introduced in this case establishes that the institution was *not* on
15   notice that Plaintiff was complaining about pain management received from
16   Defendant Sao. Specifically, two witnesses, Sarah Gates and Rosa Jackson, both
17   with years of experience in interpreting and screening grievances, testified at the
18   evidentiary hearing that the contents of the grievance filed by Plaintiff would not be
19   interpreted as encompassing a grievance against Defendant Sao regarding pain
20   management. Further, there is nothing in the institutional level response indicating
21   that pain management was understood to be part of the grievance, such that it can
22   be shown prison officials were on notice of the issue. In fact, the response
23   specifically states "These records indicate that you have been experiencing pain *due
24   to jaw surgery*[3] you received at San Joaquin general hospital." (Exhibit 1 at
25   008)(emphasis added.)

26       Many cases in this Circuit have found that the exceptions to *Reyes* do not
27   apply where it is not clear from the evidence and institutional responses that prison

---

28   [3] Not due to lack of pain management six (6) months before.

officials ignored a procedural defect. (*See Smith v. Mendoza*, Case No. 19-03750 BLF (PR), 2021 WL 930706 (N.D. Cal. March 10, 2021)( court found the *Reyes* exception did not apply for an unnamed defendant because prison officials did not 'opt not to enforce a procedural rule' as to the unnamed defendants and the institution responses never mentioned the issues with the unnamed defendants in the responses, which indicated the prison officials were not on notice of the issue); *see also Toscano v. Adam*, Case No. 16-cv-06800-EMC, 2019 WL 2288281, *24 (N.D. Cal May 29, 2019)(court found that prison officials did not ignore a procedural defect in a grievance that complained about the care by an identified doctor but did not identify another doctor of which the plaintiff later complained; "prison officials had no reason to suspect from the inmate appeal filed that there was a procedural problem of an unidentified other wrongdoer"); *Rice v. Bauer,* 2:15-cv-236-JAM-EFB P, 2018 WL 1109683 (E.D. Cal. March 1, 2018)(court found *Reyes* exception did not apply where there was no information from which prison officials could infer officers other than those specifically named in the grievance were involved, even though the grievant referenced "other officers," it was significant to this finding that the responses for the institution did not refer to the involvement of the other unnamed officer.)

Further, the evidence in this case establishes that prison officials not only did not *waive* any procedural defect related to complaints about pain management and Defendant Sao's involvement, prison officials actually *invoked* the procedural rules. In the Headquarters' response to Plaintiff's appeal of the institutional level's response, prison officials specifically refused to address any pain management issues raised by Plaintiff, which issues were interpreted to have not been part of the original grievance.  Specifically, the Headquarters'-level response stated the following:

> It is not appropriate to expand the health care grievance beyond the initial issue(s). The Health Care Correspondence and Appeals Branch

1     has the discretion whether to address new issues; it has been

2     determined the new issuc(s), pain management, not included in the

3     originally submitted CDCR 602 HC, Health Care Grievance, will not

4     be addressed at the headquarters' level per California Code of

5     Regulations, Title 15, Section 3087.5(i)[4].

6        Thus, not only does this language show that the institution *refused* to address

7 the pain management issue at the Headquarters' level of review, thereby invoking

8 the procedural rules, this also is direct evidence that the prison officials did not

9 understand Plaintiff's original grievance to involve pain management issues.

10       In *Wilson v. Zubiate*, 718 Fed. Appx. 479 (9th Cir. 2017), the court rejected

11 the plaintiff's invocation of the *Reyes* exception which was made under similar

12 circumstances. In *Wilson*, the plaintiff's appeal was cancelled at the third level of

13 review for lack of jurisdiction and the plaintiff did not appeal that cancellation. *Id.*

14 at 481. The plaintiff claimed, citing to the holding of *Reyes*, that the decision by the

15 third level of appeal was a decision on the merits and exhausted the plaintiff's

16 administrative remedies. The court rejected that argument stating:

17     CDCR's third-level decision does not discuss the substance of [the

18     plaintiff's] grievance, and the mere fact that the third-level decision

19     referred [the plaintiff] to the VA in the same manner as prior merits

20     decisions does not transform the third-level jurisdictional decision into

---

[4] On September 1, 2017, CDCR adopted a separate grievance procedure for healthcare issues. See Cal. Code Regs. tit. 15, §§ 3999.225-3999.237 [renumbered from Cal. Code Regs. tit. 15, §§ 3087-3087.11]. The new procedure has been described as follows:

[T]he updated set of procedures, applicable to health care complaints originating on or after September 1, 2017, involve only two steps. Cal. Code Regs., tit. 15, §§ 3087.2-3087.12 (2017). The first step requires the submission of a "602" form where the prisoner is housed within 30 calendar days of the incident. Id. at § 3087.2(b). If dissatisfied with the response of the institution where the prisoner is housed, the prisoner would then appeal by mailing a "health care grievance package" to the Health Care Correspondence and Appeals Branch of the CDCR. *Id.* at §§ 3087.4-3087.5. *Green v. Thiessen*, 2019 WL 687877, at *12 (S.D. Cal. Feb. 19, 2019).

1  a decision on the merits. *See Semtek Int'l Inc. v. Lockheed Martin*
2  *Corp.*, 531 U.S. 497, 501-02, 121 S. Ct. 1021, 149 L. Ed. 2d 32 (2001)
3  ("The original connotation of an 'on the merits' adjudication is one that
4  actually 'pass[es] directly on the substance of [a particular] claim'
5  before the court." (alterations in original) (quoting Restatement
6  (Second) of Judgments § 19, Comment a, at 161 (1980)).
7      Similarly, in *Gomez v. Gonzalez*, Case No. 1:22-cv-00977-HBK (PC), 2024
8  WL 3951002, *14-16 (E.D. Cal. Aug. 27, 2024), the court held that the exception in
9  *Reyes* did not apply. There the plaintiff alleged that defendant officers were
10  deliberately indifferent to Plaintiff's safety because they moved him somewhere he
11  had security concerns, they ignored those concerns, and the plaintiff was ultimately
12  attacked by gang members. *Id.* The plaintiff only named one officer specifically in
13  the grievance. *Id.* at *4-5. The court distinguished the case from *Reyes*, stating that
14  the unnamed officer was not "easily identifiable" as required by Reyes and nothing
15  in the plaintiff's grievance "suggest[ed] or impl[ied] that any other correctional
16  staff were involved, despite the grievance making "vague references to other staff."
17  *Id.* at *15. The court found it significant that the plaintiff did name one officer in
18  the grievance and that the "institutional responses to [the plaintiff's grievance did
19  not indicate the [prison] officials were aware of the involvement of any other staff
20  beyond [the officer named in the grievance]. *Id.* at 15. The Court also found that
21  prison officials did not "opt not to enforce a procedural rule" as to the unnamed
22  defendant. The court stated "[i]n *Reyes*, prison officials' responses indicated they
23  recognized [the plaintiff's] allegations against unnamed members of the Pain
24  Management Committee but did not enforce the Title 15 requirement that he name
25  them in his grievance." *Id.* at 15. The *Gomez* court found there was no indication in
26  the responses from either level of appeal that prison officials were "aware of
27  allegations against any other, unnamed…employee…[t]hus, [prison] officials did

28

12

not 'opt not to enforce a procedural rule' despite knowing the existence of unnamed prison staff involved in the incident." Id. at *15-16.

The holdings and decisions in *Williams* and *Gomez* apply similarly here. Because there is no evidence that the prison officials were aware of a procedural defect in Plaintiff's grievance and did not, therefore, specifically ignore a defect of which they were not aware, the exception in *Reyes* is not applicable here. The evidence also establishes that prison officials did invoke procedural rules by refusing to address any complaints about "pain management" which they interpreted as not being included in the original grievance. Plaintiff did not exhaust his administrative remedies and Defendant Sao is entitled to summary judgment.

### B.   Plaintiff's Complaints About Pain Management Were Specifically Not Addressed at Every Level.

Even if the grievance were susceptible of being interpreted as encompassing a complaint against Defendant Sao for pain management, the *Reyes* exception still does not apply to establish exhaustion or an excuse from exhaustion in this case. The *Reyes* holding not only required that a waiver of procedural rule be proven, it also required that the institution *render a decision on the merits of the grievance at each available step of the administrative process* in order for the exception to apply.

The Ninth Circuit has confirmed "[o]nly issues addressed in the headquarters-level review are deemed exhausted. *Id*. § 3999.230(i)-(j)." *Brannon v. Covarrubias*, 2024 WL 1253788 (9th Cir. 2024.)  Here there is no dispute and no question that Plaintiff's subsequent claims related to pain management *were specifically not addressed* at the Headquarters' level review.

In *Evans v. Muniz,* C 15-2519 CRB (PR), 2016 U.S. Dist. LEXIS 51804 *11-12 (N.D. Cal. April 18, 2016), the plaintiff claimed that he was denied halal meals in two different facilities and Plaintiff sued a lieutenant (from Facility B) for that deprivation. *Id.* at *9-10. The plaintiff did not name the lieutenant in the grievance

he filed. *Id.* The court found the grievance did not contain information that would implicate the defendant but held, even if it did, the *Reyes* exception did not apply because plaintiff did not specifically raise the denial of meals in *Facility B* until the second level of review. *Id.* The court found that "prison officials at neither the second or third level of review elected to address or consider the new claim….Under the circumstances, plaintiff did not properly exhaust…" (emphasis original)(citing to *Bulkin v. Ochoa*, No. 13-cv-00388 DAD DLB PC, 2 016 WL 1267265, at *2 (E.D. Cal. Apr. 1, 2016) (*Reyes* does not save claim not presented and addressed on the merits at each level of review of CDCR's appeal process); *Lee v. Willey*, 789 F.3d 673, 680-81 (6th Cir. 2015) (no waiver of procedural default where prisoner did not receive merits-based response at each step of administrative appeal process)).

Here, Plaintiff did not explicitly raise the matter of pain management until his appeal to the second level, and the Headquarters' level specifically elected *not* to address the merits of any pain management claim at that level, thus, the *Reyes* exception does not apply here.

Because Plaintiff does not have evidence to meet the requirements of both prongs of the *Reyes* analysis, the *Reyes* exception does not apply and Plaintiff was required to comply with the regulations governing the submissions of grievances. Specifically, Plaintiff was required to name Defendant Sao and describe his involvement, which is information Plaintiff admittedly had. He did not do so, thus, he did not exhaust his claims against Defendant Sao and Defendant Sao is entitled to summary judgment.

## III.   ADMINISTRATIVE REMEDIES WERE NOT "UNAVAILABLE" TO PLAINTIFF.

It was suggested at the hearing that administrative remedies may have been considered "unavailable" to Plaintiff because monetary compensation could not be awarded through the administrative process.

1       The Supreme Court has identified three circumstances in which administrative

2   remedies can be deemed "unavailable", such that exhaustion is excused: (1) where

3   an administrative remedy "operates as a simple dead end" in which officers are

4   "unable or consistently unwilling to provide any relief to aggrieved inmates;" (2)

5   where an administrative scheme is "incapable of use" because "no ordinary prisoner

6   can discern or navigate it," and (3) where "prison administrators thwart inmates

7   from taking advantage of a grievance process through machination,

8   misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643-44 (2016).

9       Here, none of these exceptions apply. To the extent the suggestion is that

10  Plaintiff was only seeking monetary compensation, and thus, did not have to

11  exhaust through all levels of appeal, that argument has been specifically rejected by

12  courts. See *Lee v. Look*, 2:22-cv-01010 DB, 2024 WL 1857540, *6-7 (E.D. Cal.

13  April 29, 2024)(plaintiff's claims that he had no available remedies because

14  monetary compensation was not available through the healthcare appeals process

15  did not make the plaintiff's administrative remedies "unavailable" such that he was

16  excused from exhaustion); *See also Ramirez v. Rose*, Case No. 2:19-cv-0827 KJN

17  P, 2020 WL 1907445, * 18 (E.D. Cal March 5, 2020)(finding the plaintiff's

18  argument that he was excused from exhaustion because no monetary compensation

19  was available through the healthcare grievance system to be "unavailing" because

20  "[p]risoners must exhaust their administrative remedies regardless of the relief they

21  seek, i.e., whether injunctive relief or money damages, even though the latter is

22  unavailable through the administrative grievance process" and finding no evidence

23  that the plaintiff was led to believe that no further relief was available [5])(citing to

24  *Booth v. Churner*, 532 U.S. 731, 741); *Morton v. Hall,* 599 F.3d 942, 945 (9th Cir.

25  2010).

26  _____

27      [5] The same is the case here.  Plaintiff was not under the impression that there were no futher administrative remedies available since he appealed to the

28  Headquarters' level (and the matters considered part of the original grievance were addressed at the Headquarters' level.)

Further, it is clear from the evidence in this case that there was some remedy available to plaintiff. The Headquarters' level response stated the following:

California Correctional Health Care Services strives to provide constitutionally adequate medical care for all California inmates. While the focus is on the adequacy of current and prospective care, due consideration is also given to allegations of inadequacies or lapses in past care. California Correctional  Health Care Services includes the appropriate personnel and organizational functions to review such information and to take corrective action as may be warranted. **Your concerns and issues have been taken into consideration and sent to the proper entities for appropriate review and/or action.** Any such internal reviews and resulting actions are considered protected by law as confidential. (Exhibit 1 at 002.)(emphasis added.)

This language establishes that the institution reviewed Plaintiff's concerns with respect to the botched surgeries, took those concerns under consideration, and sent those concerns for evaluation and possible action. There were, then, other remedies available to Plaintiff even where monetary compensation may not have been specifically available.

## IV. THERE IS NO EVIDENCE THAT THE GRIEVANCE WAS IMPROPERLY HANDLED, AND THAT WOULD NOT EXCUSE EXHAUSTION IN ANY EVENT.

The Court suggested at the hearing that the grievance may have been improperly handled because the institution only interpreted the grievance to be about monetary compensation. (Hearing transcript at 188:18-189:25.) To the extent that the Court concludes that Plaintiff's grievance was improperly handled, this would appear to be akin to an argument that the grievance was improperly screened. "Improper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA." *Sapp*, 623 F.3d at 823. But, in order to invoke this

excuse, an inmate must first show that they filed a grievance in the first place *that complied with the requirements of the prison's inmate grievance process*. *Martinez v. Beard*, 1:14-cv-00405-DAD-JLT (PC), 2017 WL 511854, *15 (E.D. Cal. Feb. 7, 2017). As argued thoroughly herein, Plaintiff did not do that here.

Plaintiff did not comply with the regulations which mandated he provide Defendant Sao's name, which Plaintiff knew at the time he filed the grievance, and a description of how Defendant Sao was involved, which Plaintiff also knew at the time of the filing of grievance. Further, as the court pointed out in *Martinez*, "the Court is unable to find any court that allows an improper screening exception to cure an untimely inmate grievance." *Id.*  Plaintiff's grievance here was, indisputably, untimely. The medical documents reflect that the last time that Defendant Sao provided any treatment to Plaintiff was May 2017. Plaintiff admitted this in his testimony at the hearing and Defendant Sao also testified to this being the case. Plaintiff did not file his grievance until October 2017, five (5) months later. (Exhibit 1.) The evidence also established that Plaintiff moved from the institution where Defendant Sao was assigned on July 3, 2017, more than ninety (90) days before he filed his grievance. (Exhibit 2.)

 The regulations in effect at the time required Plaintiff to submit the claim within thirty (30) days of the "action or decision being grieved." CCR § 3999.227(b)(1). The Plaintiff did not comply with the time constraints as he filed the grievance well outside the last time he was treated by Defendant Sao. Because Plaintiff did not comply with the prison's regulations with respect to how a grievance must be filed, Plaintiff cannot now claim that he was excused from the exhaustion requirement because of improper handling of the grievance by the institution. Further, the institution cannot be said to have waived the thirty (30) day time requirement because, as previously argued, prison officials had no

understanding that Plaintiff was complaining about care he received six (6) months earlier.[6]

Further, the Plaintiff's explanation in Section B of the grievance form, cannot establish proper exhaustion. The regulations in effect specifically prohibited a grievant from adding any new issues not included in the original grievance when appealing the institutional level response. CCR § 3999.229 (a)(3). Although the Headquarters' level had discretion as to whether they would consider new issues brought in the appeal (CCR § 3999.230(i)), in this case, the Headquarters' level did not exercise that discretion and specifically refused to address any claims of pain management, which were deemed new. This is permitted by the regulations and is not improper handling. Further, the courts have consistently confirmed that a grievant cannot rely on information provided in interviews or in response to an institutional level response to satisfy the requirements that they properly exhaust their administrative remedies in compliance with the institution's regulations. (See *Harmon*, 2021 WL 6618681, *29 (plaintiff cannot rely on responses or interviews after the original appeal as grounds to exhaust their claims against a defendant)(citing to *Smith v. Mendoza*, No. 19-03750 BLF (PR), 2021 WL 930706, at *9 (N.D. Cal. Mar. 10, 2021) (finding that plaintiff did not exhaust his claims as to defendants who were mentioned in an "upper-level appeal," but who were not named "in the originally submitted CDCR Form 602")).

None of these arguments relieve Plaintiff of his obligations under the regulations or the very clear requirements throughout case law on the exhaustion issue that he abide by the regulations for how to submit a grievance. Plaintiff did not comply with the regulations, and he cannot now point to perceived issues with

---

[6] This is particularly true here where the Plaintiff specifically identified the pertinent date in his grievance as "9/11/2017". (Exhibit 1 at 004.) The Plaintiff should not be permitted to benefit from his false representations that the matters at issue took place in September 2017 in order to meet the thirty (30)-day deadline for filing a grievance.

how that grievance was handled to relieve him of those obligations to comply with the regulations.

## V.    THE INSTITUTION WAS NOT ON NOTICE THE PLAINTIFF ALLEGED IMPROPER CARE BY DEFENDANT SAO.

The benefits of exhaustion, and the purposes behind the exhaustion requirement of the PLRA can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. *Woodford*, 548 U.S. 81, 90-91, 95. There is no "special circumstances" exception to the requirement for exhaustion. *Ross*, 578 U.S. at 641. The Supreme Court has stated that the PLRA prevents "a court from deciding that exhaustion would be unjust or inappropriate in a given case" and "all inmates must now exhaust all available remedies: 'Exhaustion is no longer left to the discretion of the district court.'" *Id.* (citing *Woodford*, 548 U.S., at 85.)

The court here cites to vague comments of "pain" in Plaintiff's grievance but Plaintiff does not connect the complaints of pain to any of the actions of Defendant Sao. Instead, Plaintiff refers to botched surgeries and it is clear from all of the evidence that the institution never understood Plaintiff's allegations of "pain" to refer to a lack of pain management from Defendant Sao. When the institution does not have notice, exhaustion is not satisfied. There are numerous cases in the Ninth Circuit which have found no exhaustion in similar circumstances.

In *Davis v. Ugwueze*, 1:20-cv-00276-NODJ-HBK (PC), 2024 WL 519729 (E.D. Feb. 9, 2024), the plaintiff claimed he suffered heart injuries due to an improperly-treated abscessed tooth and sued doctors and a dentist involved with his care. The plaintiff filed a grievance but did not name the dentist "or describe any actions or omissions on his part." *Id.* at *5-6. The defendant dentist alleged the plaintiff failed to exhaust. *Id.* The plaintiff claimed that the grievance he filed "put CDCR on notice as to his claims against [the defendant dentist] because 'the lack of

1   adequate dental care is . . . inextricably intertwined with, the alleged inadequate

2   medical care and is in fact part of it.'" *Id*. at *6. The court found that the grievance

3   did not exhaust the plaintiff's claims against the dentist because the plaintiff did not

4   follow the procedural rules for filing a grievance and did not challenge the "dental

5   care" he received as opposed to the "medical care" he received. *Id.* at *17-18. The

6   court found that the institution was not put on notice that the plaintiff was also

7   complaining about the care he received from the dentist. *Id.* at *18-19. The court

8   also found it significant that the grievance and appeal responses did not mention the

9   dentist or the dental care the plaintiff received, thus "the Court cannot infer that

10  prison officials had notice of those claims." *Id*. at *19.

11      The facts from *Davis* are very similar to those here. In *Davis,* the institution

12  could have looked through and investigated the plaintiff's medical records and

13  discovered that the unnamed dentist was involved in the plaintiff's care, just as the

14  Court suggests the institution could have done in this case. But the court in *Davis*

15  recognized that the onus should not be placed upon the institution to do so, or to

16  speculate regarding all of the possible complaints an inmate may have. That is not

17  what is required by the regulations. In this case, it was not clear that Plaintiff was

18  complaining about pain he had from a lack of pain management from an unnamed

19  doctor who had treated him six (6) months before at a different institution, as

20  opposed to complaining about pain due to botched dental surgeries. And here, the

21  institution expressly stated that the original grievance was not understood to be

22  about pain management, thus the evidence establishes that the institution was *not*

23  on notice.

24      In *Ramirez v. Johnson, et. al.*, Case No. 2:17-cv-07788-DSF-KES, 2019 U.S.

25  Dist. LEXIS 166880 (C.D. Cal. June 19, 2019), the court found that the plaintiff

26  failed to exhaust his administrative remedies for his complaints against a CDCR

27  doctor, Dr. Haar, because the plaintiff failed to name Dr. Haar in the grievance. The

28  plaintiff alleged that he had cataract surgery during which the surgeon detached the

plaintiff's retina. *Id.* at *12. The plaintiff alleged that Dr. Haar and another doctor examined the plaintiff after the botched surgery and "ignored the detachment." *Id.* at *12-13. The court found that the plaintiff failed to exhaust his administrative remedies against Dr. Haar because he failed to name Dr. Haar or otherwise reference Dr. Haar in his grievance. The grievance alleged that the plaintiff had a botched surgery and that he was not notified that his was retina was detached for a month following the surgery (the time period he alleged he was examined by Dr. Haar - who did not say anything about the detachment.) The court found that the plaintiff's failure to name Dr. Haar established that the plaintiff failed to comply with the regulations and the grievance did not suffice to exhaust the plaintiff's administrative remedies for his allegations against Dr. Haar. *Id.* at *34-35.

It was significant to the court in *Ramirez* that the evidence presented by the plaintiff in opposition established that the plaintiff *did know* Dr. Haar's name when he filed his grievance. *Ramirez*, 2019 U.S. Dist. LEXIS 166880, at *35. Specifically, the court stated, the evidence submitted by the plaintiff "shows that Plaintiff knew Defendant Haar's name prior to submitting the January 2016 grievance and could have included her by name if he thought she had done something wrong." *Id.*

Again, the same analysis applies here. In *Ramirez*, the institution could have reviewed medical records and determine that Dr. Haar was involved in plaintiff's treatment, but the court properly recognized that the institution is not required to do that. An institution is not required to investigate or speculate as to all of the remotely possible persons or allegations an inmate may be complaining about in a grievance. Nothing in the regulations or case law requires that level of inquiry, interpretation, or speculation. And the Plaintiff here knew Defendant Sao's identity. Plaintiff has offered no explanation for why he did not just name Defendant Sao in the grievance if Plaintiff had complaints about Defendant Sao, as Plaintiff did name the other doctors who actually conducted the surgeries Plaintiff alleged caused his

1   pain. (*See also Fuller v. Eugene Nguyen*, 2:17-cv-0600 WBS AC P, 2023 WL
2   2636321 (E.D. Cal, March 4, 2023)(plaintiff's claims against medical providers not
3   exhausted where plaintiff did not name them in the grievance and did not receive a
4   final-level response on the grievance);

5       As the Supreme Court pointed out in *Woodford*, 548 U.S. at 95:

6         The benefits of exhaustion can be realized only if the prison grievance
7         system is given a fair opportunity to consider the grievance. The prison
8         grievance system will not have such an opportunity unless the grievant
9         complies with the system's critical procedural rules.

10      A requirement that the institution in this case guess---that Plaintiff meant that
11  he was complaining about the medical care received from Defendant Sao six (6)
12  months before Plaintiff filed the grievance—does not embody the fairness standard
13  contemplated by the Supreme Court in *Woodford*. It places obligations upon the
14  institution that do not exist in regulations or case law and relieves Plaintiff from his
15  obligations under the regulations, which he was capable of fulfilling because he
16  admittedly had all the pertinent information to provide.

17      A finding that this grievance was sufficient to exhaust the claims against
18  Defendant Sao would contradict the express and clear intent behind the exhaustion
19  requirement—to fairly provide the institution with notice.

20                 **CONCLUSION**

21      Plaintiff did not comply with the regulations for the filing of a grievance.
22  Plaintiff had the information necessary to comply with the regulations and did not
23  provide it. Therefore, he did not exhaust. The Reyes exception does not apply
24  because there is no evidence that 1) the institution was aware that there was a
25  procedural defect, and 2) the issue of pain management was not considered at all
26  levels of appeal. The grievance process was not unavailable to Plaintiff and any
27  perceived mis-screening of the grievance did not excuse Plaintiff from exhaustion,

28

1    Defendant respectfully contends that he is entitled to summary judgment for

2    Plaintiff's failure to exhaust his administrative remedies.

3

4

5

6    Dated:  November 7, 2024                    Respectfully submitted,

7                                               ROB BONTA
                                               Attorney General of California
8                                               GIAM M. NGUYEN
                                               Supervising Deputy Attorney General

9

10

11                                              AUDRA C. CALL
                                               Deputy Attorney General
12                                              *Attorneys for Defendant J. Sao*

13    LA2020604139

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF COMPLIANCE

2       The undersigned, counsel of record for Defendant, certifies that this brief

3  contains 7000 words, which complies with the word limit of L.R. 11-6.1.

4

5  Dated:  November 7, 2024           Respectfully submitted,

6                             ROB BONTA
                           Attorney General of California

7

8

9                           AUDRA C. CALL
                           Deputy Attorney General

10                         *Attorneys for Defendant J. Sao*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

## CERTIFICATE OF SERVICE

Case Name:  **Trejo, Rogelio v. Michael Freeman, et. al.**          No.    **2:18-cv-03458-MEMF-(ADSx)**

I hereby certify that on <u>November 7, 2024</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT J. SAO'S POST-HEARING BRIEF FOLLOWING**

**ALBINO HEARING ON EXHAUSTION**

I certify that **all** participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct, and that this declaration was executed on <u>November 7, 2024</u>, at Los Angeles, California.

<div style="display:flex; justify-content:space-between;">
<div style="text-align:center;">
Kiry Yeoun<br>
Declarant
</div>
<div style="text-align:center;">
<em>/s/ Kiry Yeoun</em><br>
Signature
</div>
</div>

LA2020604139
67220716.docx