O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGELIO TREJO,<br><br>　　　　　　　Plaintiff,<br>　　　v.<br><br>MICHAEL BRANDON FREEMAN, et al.,<br><br>　　　　　　　Defendants. | Case No.: 2:18-cv-03458-MEMF-ADSx<br><br>**ORDER ON COURT'S FINDING REGARDING EXHAUSTION OF ADMINISTRATIVE REMEDIES** |

I. **Background**

Following the Court's finding on summary judgment that there was a genuine dispute of fact with regards to whether Plaintiff Rogelio Trejo had exhausted his administrative remedies for his deliberate indifference claim under 42 U.S.C. § 1983 against Defendant J. Sao (ECF No. 77), the Court granted Sao's motion for evidentiary hearing (ECF No. 119) and held an evidentiary hearing on the issue on October 3, 2024. At the hearing, the Court heard testimony from Trejo, Sao, Jackson Rosa, and Sara Gates. At the close of the hearing, counsel for Sao requested submission of written briefing, to which then-counsel for Trejo opposed.[1] *See* ECF No. 135 ("Tr."). Sao submitted a closing brief on November 7, 2024. ECF No. 137 ("Def. Brief").

II. **Factual Findings**

The Court incorporates its findings of fact as made in its summary judgment order (ECF No. 77), reiterates the most pertinent facts to this order, and makes further additional findings of fact based on the evidentiary hearing as follows.

In early February of 2017, Trejo's cellmate struck him in the face from which Trejo was given treatment from an outside hospital to treat factures sustained to his jaw, nose, and orbital bone. ECF No. 77 ("MSJ Order") at 6–7. On February 6, 2017, Dr. Michael Freeman, a board-certified plastic surgeon, performed surgery on Trejo at the San Joaquin Hospital. *Id.* at 7. The next day, Trejo was transported back to the Central Treatment Center ("CTC") of the Kern Valley State Prison ("KSVP"). *Id.* Sao is a licensed physician and surgeon who was the CTC physician at KVSP at the time Trejo was recovering from his injury. *Id.* Sao managed the care of the CTC patients, including Trejo, and monitored Trejo's primary medical needs accordingly. *Id.*

Upon Trejo's transfer to the CTC, Sao introduced himself to Trejo and explained that Sao was going to be Trejo's doctor and be the one taking care of Trejo. Tr. 24:22-25:9. During Trejo's stay at the CTC following this first surgery, Trejo saw Sao either every day or every other day until around April of 2017, when he had a follow up surgery. *Id.* 30:2-5. Trejo was discharged from the

---

[1] Trejo previously had pro bono counsel who agreed to represent Trejo "up through and including an evidentiary hearing on the limited issue of whether he exhausted his administrative remedies prior to the instant lawsuit," which pro bono counsel did not construe to extend to closing briefing past the evidentiary hearing itself. ECF No. 133. No closing brief was submitted from counsel, nor from Trejo on a pro se basis.

2

CTC around May of 2017, and then transferred in July of 2017, after which he did not see Sao again. Tr. 35:10-39:2.

On October 11, 2017, Trejo filed a healthcare appeal that included the following complaint:

> The following appeal is meant to address a severe deprivation of rights afforded to me by 8th Amendment provisions, state and federal guidelines for medical treatment and state law. Specifically, on 9/11/17, I was taken to Bakersfield Hospital to see a Dr. Norris, employed under CDCR contracts. This doctor informed me that the screws in my mouth are loose, that excessive metal was left in my mouth and that the surgery I received was of shockingly poor quality. This being imposed upon me has left me in extreme pain. On the same token this issue is ongoing. I had received surgery at San Joaquin Hospital by Dr. Freeman. The surgery was substandard and of negligent quality. As a direct result of this I have continuously suffered undo [sic] pain for weeks which fails to meet contemporary standards of decency amongst the medical community. Subsequently I had to be rushed to an emergency room in Bakersfield Hospital. I have undergone an inability to perform the daily necessities of life due to botched surgeries, excessive metal, loose screws etc. Which should have been removed. During this entire horrendous experience, an unnecessary wanton infliction of pain has been imposed thus violating 8th Amendment protections against cruel and unusual punishment. In the same course of action, failing to properly act and remedy the botched surgeries, they are acting with deliberate indifference to serious medical needs, further undermining 8th Amendment canon. Additionally, CCR 15 § 3350(b) 1, 4 and 5 clarify that being I cannot eat, talk or drink properly and my daily necessities of life are not met, my rights are violated on the state level as well. I seek injunctive relief and monetary compensation in the form of punitive, compensatory and nominal damages.

MSJ Order at 9. Trejo was aware that Sao was the doctor who referred his treatment with Dr. Norris and Dr. Freeman. Tr. 45:3-11. At the time of filing the grievance, Trejo knew who Sao was, what he looked like, and knew the time frame that Sao treated him. Tr. 45:24-46:8.

### III. Applicable Law

The Prison Litigation Reform Act ("PLRA") requires that "a prisoner confined in any jail, prison, or other correctional facility," exhaust all available remedies before initiating a civil action with respect to prison conditions. 42 U.S.C. § 1997e(a). Under the PLRA, a defendant has the burden of proving the affirmative defense of failure to exhaust administrative remedies. *See Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PRLA, that define the boundaries of proper exhaustion. *Jones*

*v. Brock*, 549 U.S. 199, 218 (2007). Under the California Code of Regulations, an individual submitting a health care grievance must "document clearly and coherently all information known and available to them regarding the issue." Cal. Code Regs. Tit. 15 § 3999.227(g). In particular, the regulations require that a patient "include any involved staff member's last name, first initial, title or position, and the date(s) and description of their involvement." *Id.* "If the patient does not have information to identify involved staff member(s), the patient shall provide any other available information that may assist in processing the health care grievance." *Id.*

### IV.     Discussion

The Court finds that the facts following the evidentiary hearing reflect that Trejo was fully aware of Sao's identity and his role in Trejo's care at the time of the submission of his grievance. However, the Court finds that Trejo's failure to identify Sao by name in the grievance despite such knowledge does not preclude exhaustion here. While Sao contends that the regulations specifically require the grievant to include a staff member's identity and only make an exception when it is not known to them, binding authority has not strictly interpreted these regulations. Rather, in *Reyes v. Smith*, the Ninth Circuit did not conduct the simple two-step analysis Sao advocates for, but rather reiterated that a grievance is sufficient "if it alerts the prison to the nature of the wrong for which redress is sought." 810 F.3d 654, 659 (9th Cir. 2016) ("The grievance process is only required to 'alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.'").[2]

In *Reyes*, the plaintiff complained of a prison's Pain Management Committee's decision to gradually reduce and discontinue his pain medication. *Id.* at 656. While the plaintiff identified the committee in his grievance, he did not identify any of the three doctors on the committee by name, although it appears the plaintiff was aware of their identities. *Id.* The defendants in *Reyes* made a similar argument to the one made by Sao here—that the plaintiff could not therefore have properly

---

[2] Sao argues that past Ninth Circuit law relied on an outdated statute. Def. Brief at 2. However, the Court notes that even prior versions of the statute which are cited by *Reyes* and the other cases Sao refers to have required a complainant to "include the staff member's last name, first initial, title or position, if known . . ." *See* 15 CCR 3084.2(a)(3) (2010); *cf.* 15 CA 3999.227(g)(1) (similar requirement). Therefore, the Court does not find any substantial difference in the statutes that requires a different interpretation of *Reyes*.

put the administration on notice of claims against the individual doctors. *Id.* at 658. However, the Ninth Circuit held that "[t]he grievance process is only required to 'alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.'" *Id.* at 659. There, the plaintiff's grievance "plainly put prison officials on notice of the nature of the wrong alleged," and the prison officials "plainly knew that the [committee], of which [the individual doctors] were members" had made the decision the plaintiff complained of. *Id.* Accordingly, under *Reyes*, a plaintiff is not barred from exhaustion simply because he knew of some information of the identity of a defendant that was not explicitly included in the grievance.

      Rather, *Reyes* reflects that in cases where defendants are not specifically identified, there must be sufficient connection between the claim in the grievance and the unidentified defendants such that prison officials can be said to have had "notice of the alleged deprivation" and an "opportunity to resolve it." *Id.* at 659. In particular, the Ninth Circuit there found that there was a sufficient connection between plaintiff's complaint of inadequate pain management and the doctors who served on the committee that had denied the plaintiff medication that it was reasonably should have put the doctors on notice of a claim against them. *Id.* The Court finds this analogous to the case here—Trejo complained of "ongoing" pain and negligence with regards to the "surgery" that he received, prior to September 11, 2017. Even though the date provided was after Trejo left Sao's care, his grievance clearly identifies a prior surgery—the surgery he had at San Joaquin Hospital by Dr. Freeman. The date and details of this surgery would have been reasonably identifiable, and clearly linked the surgery to the time that Trejo was in Sao's care. Moreover, the grievance identifies his subsequent stay at Bakersfield Hospital, which was directly ordered by Sao himself. Tr. 61:18-23.[3] Therefore, the Court finds that the grievance sufficiently describes a complaint that reasonably should have put the prison on notice of Sao's involvement in the issues identified.[4]

---

[3] It appears that there are two visits to Dr. Norris in Bakersfield—one in April of 2017, and one in September of 2017. Tr. 29:9-19; 41:21-42:8. From the wording of the grievance, the "emergency room" visit at Bakersfield Hospital would appear to be separate from the September 2017 visit mentioned explicitly by date.

[4] Although Sao makes a number of arguments related to the fact that the prison was not actually on notice of a claim against Sao, the Court does not find these move the needle as the Court's finding here is that the prison *should have been*.

Sao attempts to distinguish from *Reyes* by arguing that the Ninth Circuit's holding only applies in cases where "prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Reyes*, 810 F.3d at 658. First, the Court notes that the Ninth Circuit's analysis on exhaustion based on failure to provide sufficient notice was made separately and apart from its holding on waiver. *Id.* at 659 (finding that the grievance "plainly put prison officials on notice of the nature of the wrong alleged"). The Court interprets *Reyes* as providing two grounds for finding exhaustion—first, that a procedural issue can be waived if prisons officials render a decision on the merits, *and alternatively*, that the procedural issue is insufficient to bar exhaustion where the grievance "alerts the prison to the nature of the wrong for which redress is sought." *Id.*

Regardless, even if *Reyes* were to apply only in instances where officials address the merits of the grievance, the Court finds that this is what happened here. Here, the prison officials did make a decision on the merits of the grievance at each step of the process. Although Sao argues that the procedural defect here was not ignored because there was no reason for prison officials to know about the defect, as explained previously, the Court finds that the prison should have reasonably been able to identify Sao's connection to the grievance. Nevertheless, the grievance was still addressed at each level. This is exactly what *Reyes* held—that where a plaintiff complained about denial of pain medication, the officials had "full notice" of who would have been in charge of those decisions even though they were not specifically named. *Id.* at 659. Accordingly, the Court does not find it necessary to make a finding on whether or not the prison officials here actually knew there was a procedural defect.[5]

Finally, the Court finds that there was effectively a decision here on the merits at all levels. Sao argues that on the appeal, the institution refused to address pain management issues because they "were interpreted to have not been part of the original grievance." Def. Brief at 10. However, the Court finds that the original grievance did reasonably give notice to pain management issues that

---

[5] The same is true with respect to Sao's arguments about the timeliness of Trejo's complaint. To the extent the complaint was untimely, the Court finds the procedural defects waived because the Court has found that Trejo's grievance should have put the institution on notice regarding Sao's involvement in Trejo's surgeries and the resulting management of the pain.

were ongoing, and the appeal did not raise a "new" issue of pain management. As such, the institution's decision to interpret it differently to not address the issue should be considered effectively a decision on the merits of the issue, or alternatively, excuses exhaustion altogether. *See* MSJ Order at 14 (finding that Trejo "properly raised his allegations against Sao at every level" and thus the prison's failure to "consider them was through no fault of his own").

## V.     **Conclusion**

For the foregoing reasons, the Court finds that Trejo sufficiently exhausted his administrative remedies against Sao. The Court will issue a separate order concerning further proceedings, including additional settlement efforts.

IT IS SO ORDERED.

Dated: March 18, 2025

HON. MAAME EWUSI-MENSAH FRIMPONG
United States District Judge